UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | CHAPTER 7 |
| THE UPPER CRUST, LLC, et al.,[1] | ) | CASE NO. 12-18134-HJB |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| MARK G. DEGIACOMO, | ) | |
| CHAPTER 7 TRUSTEE OF THE UPPER | ) | |
| CRUST, LLC et al., | ) | ADVERSARY PROCEEDING |
| | ) | NO. 14-01163 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JORDAN TOBINS and | ) | |
| STEFANY TOBINS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PRETRIAL STIPULATION, RULE 26(f) REPORT AND CERTIFICATION AND JOINT PROPOSED DISCOVERY PLAN**

Pursuant to the Preliminary Pretrial Order of this Court dated May 6, 2015 (Docket No. 28) and Fed. R. Civ. P. 26(f), as made applicable to this proceeding by Fed. R. Bankr. P. 7026, the following parties conferred by telephone on July 1, 2015 at 10:00 a.m.: Ryan M. MacDonald, Esq. on behalf of Plaintiff Mark G. DeGiacomo, the Chapter 7 trustee for the bankruptcy estate

---

[1] The other Chapter 11 cases substantively consolidated with The Upper Crust, LLC (Case No. 12-18134) are The Upper Crust - Back Bay, LLC (Case No. 12-18135), The Upper Crust-Fenway, LLC (Case No. 12-18136), The Upper Crust-Harvard Square, LLC (Case No.12-18137), The Upper Crust-Hingham, LLC (Case No.12-18138), The Upper Crust-Lexington, LLC (Case No. 12-18139), The Upper Crust-State Street, LLC (Case No. 12-18140), The Upper Crust - South End, LLC (Case No. 12-18142), The Upper Crust - Pennsylvania Avenue, LLC (Case No. 12-18143), The Upper Crust – D.C., LLC (Case No. 12-18148), The Upper Crust – Waltham, LLC (Case No. 12-18144), The Upper Crust-Watertown, LLC (Case No. 12-18145), The Upper Crust-Wellesley, LLC (Case No. 12-18146), and JJB Hanson Management, Inc. (Case No. 12-18147) (collectively, the "Debtors").

of the Upper Crust LLC, et al. (the "Trustee" or "Plaintiff"), Richard Briansky, Esq. on behalf of

Defendants Jordan Tobins ("Jordan") and Stefany Tobins ("Stefany"), (Jordan and Stefany are

collectively, the "Defendants")  (the Defendants and the Trustee are collectively, the "Parties").

In connection with the requirements set forth in the Preliminary Pretrial Order the Parties state as

follows:

## I.      THEORY OF CAUSES OF ACTION AND/OR DEFENSES

### A. *Theory of Plaintiff's Causes of Action*

In Counts I, III and V of the Trustee's Adversary Complaint the Trustee is seeking to

avoid certain transfers made to Jordan during the two and four year periods prior to the Petition

Date[2] pursuant to 11 U.S.C. § 548 and M.G.L. c. 109A §§5(a)(2) and 6(a) (Massachusetts

Uniform Fraudulent Transfer Act) in connection with the Trustee's powers under 11 U.S.C. §

544(b).  These transfers are summarized in Exhibits A and C to the Trustee's Adversary

Complaint.  In Counts II, VII and IX the Trustee is seeking to recover the value of these transfers

for the benefit of the bankruptcy estate under 11 U.S.C. § 550.  The Trustee is seeking to avoid

and recover the value of these transfers as fraudulent transfers on the basis that Jordan caused the

Debtor to make these transfers to him for personal expenses, not compensation related to

Jordan's employment with the Debtors or attributable to the Debtors' business operations.

In Counts IV and VI of the Trustees Adversary Complaint the Trustee is seeking to avoid

certain transfers made to Stefany during the four year period prior to the Petition Date pursuant

to M.G.L. c. 109A §§5(a)(2) and 6(a) (Massachusetts Uniform Fraudulent Transfer Act) in

connection with the Trustee's powers under 11 U.S.C. § 544(b).  These transfers are summarized

in Exhibits B to the Trustee's Adversary Complaint.  In Counts VIII and X the Trustee is seeking

---

[2] Capitalized terms not otherwise defined in the discussion of the Plaintiff's Theories shall have the same
meaning ascribed to such capitalized terms in the Trustee's Adversary Complaint.

2

to recover the value of these transfers for the benefit of the bankruptcy estate under 11 U.S.C. §

550.  The Trustee is seeking to avoid and recover the value of these transfers as fraudulent

transfers on the basis that the transfers to Stefany were for payroll and benefits and Stefany

preformed little or no services for the Debtors and the transfers to Stefany were not attributable

to the Debtors' business operations or compensation for Stefany's purported employment with

the Debtors.

### B.  Theory of Defendants' Defense

The Defendants maintain that the Trustee's claims are barred by the plain language of a

settlement agreement  among Jordan Tobins ("Jordan"), Stefany Tobins,, the Upper Crust, LLC

(the "Upper Crust") who, with Joshua Huggard ("Huggard") and Brendan Higgins ("Higgins").

The Defendants contend that the specific language selected by the parties and incorporated in the

Settlement Agreement manifests an unequivocal intent to discharge and terminate "any and all"

"claims" "known or unknown," "direct or derivative" which the Upper Crust (and Huggard and

Higgins) "now have" or "ever had" against the Tobins.

Moreover, Jordan and Stefany contend that the Trustee has no evidence to support any of

the claims against either of them but rather that any alleged transfer was for fair and reasonable

consideration including payment for labor provided to the Debtors.

### C.  Theory of Defendants' Counterclaims

The Defendants assert that Mark G. DeGiacomo, the Chapter 7 Trustee of the estate of

the Upper Crust (the "Trustee") ignored the terms of the Settlement Agreement and filed an

adversary proceeding asserting the same claims (i.e. diversion of proceeds) against the same

parties (Jordan and Stefany) that the Upper Crust previously released.  By this Action, the Tobins

seek their damages as a result of the Trustee's breach of the Settlement Agreement and equitable

3

relief in the form of an order requiring the Trustee to specifically perform under the Settlement

Agreement.

    *D.  Theory of Plaintiff's Defenses to Defendants' Counterclaims*

The Trustee has asserted that the Defendant's Counterclaims fail to state a claim upon

which relief can be granted.  The Defendants' Counterclaims rest on the assumption that the

release and covenant not to sue contained in the purported prepetition Settlement Agreement and

Mutual Release dated July 31, 2012 (the "Settlement Agreement") is enforceable.  The Trustee

asserts that the Defendants' counterclaims fail because the Settlement Agreement, while

executed by all parties, was never consummated and therefore, the release and covenant not to

sue provided therein cannot form the basis of the Defendants' contract claims and M.G.L. c. 93A

claim.   In addition, even if the Settlement Agreement was consummated prepetition, Counts I

and II of the Defendants' counterclaim fail to state a claim because the Defendants cannot

establish any recoverable damages.  Moreover, the Defendants' Chapter 93A claim against the

Trustee in Count III of the Defendants' counterclaim also fails because the Defendants' cannot

meet their burden that the Trustee was engaged in trade or commerce for purposes of M.G.L. c.

93A as there was no commercial relationship between the Trustee and the Defendants because

here the Parties contact occurred only in the context of litigation.  See e.g. In re Inofin Inc., 512

B.R. 19, 92 (Bankr. D. Mass. 2014).  The Trustee reserves his right with respect to assert further

defenses that may arise in the context of discovery.

## II.    CONTENTIONS OF FACT

  *A.  Stipulated Facts.*

    1.    On October 4, 2012, the Debtors filed voluntary petitions pursuant to Chapter 11

of the United States Bankruptcy Code (the "Petition Date").

2.      On November 7, 2012, the Trustee was appointed as the Chapter 11 Trustee of the

Debtors' jointly administered cases.

3.      On March 6, 2013, the Court entered an order converting the Debtors' jointly

administered cases to Chapter 7 and the Trustee was appointed as the Chapter 7 Trustee of the

Debtors' jointly administered cases.

4.      In or around 2005, Jordan, Joshua Huggard ("Huggard") and Brendan Higgins

("Higgins") formed Upper Crust, LLC.  The Upper Crust  was the sole member of the other

Debtors.

5.      Before the Petition Date, Jordan  formed Coletrain, Inc. ("Coletrain") and

Coleman, Inc. ("Coleman").  Coletrain and Coleman  are non-debtors (collectively, the "Non-

Debtor Entities").

6.      On or about, April 5, 2012, the Debtors and Huggard, Higgins and Cocobling,

filed an complaint against Jordan, Stefany, Coletrain, Coleman and the Debtors' former

accountant, David Marcus, in Massachusetts Superior Court, Suffolk County, C.A. No. 12-1346

(the "State Court Action").

7.      A copy of the State Court Action is attached as **Exhibit A**.

8.      The Debtors, Jordan, Stefany, Huggard, Higgins, Hurley and the Non-Debtor

Entities (collectively, the "Settlement Parties") signed the Settlement Agreement.  A copy of the

Settlement Agreement is attached as **Exhibit B**.

9.      Paragraph 18 of the Settlement Agreement provided, in relevant part that

> Tobins will pay or cause to be paid, by cash, bank check or wired
> funds, $250,000 to the Upper Crust, said payment to be made no
> later than October 1, 2012 (the "Closing Payment") and shall be
> made to an account or payee as designated by the Upper Crust in
> writing.  Upon receipt of said Closing Payment: . . .

5

10.     On or about September 28, 2012, Jordan caused Ditmars Limited ("Ditmars") to pay on his behalf $250,000 to the Debtors by wire to counsel to Debtor's counsel pursuant to paragraph 18 of the Settlement Agreement.

11.     After the Debtors received the $250,000 settlement payment, the State Court Litigation was not dismissed with prejudice.

12.     The plaintiffs in the Pinto Litigation filed a proof of claim in the Debtors' cases dated June 26, 2013 in the amount of $3,069,590.00 and identified as Claim No. 51 on the Debtors' Claims Register.

13.     The DOL filed a proof of claim in the Debtors' cases dated April 26, 2013 in the amount of $883,481.52 and identified as Claim No. 2 on the Debtors' Claims Register.

*B.     Contested Facts Asserted by the Plaintiff*

14.     During the period of October 4, 2008 through the Petition Date, the Debtors transferred, other than salary, a total of $1,372,592.00 to or for Jordan's benefit (the "Four-Year Transfers to Jordan").

15.     Between October 4, 2010 and through the Petition Date, the Debtors transferred, other than salary, a total of $406,328.00 to or for Jordan's benefit (the "Two-Year Transfers to Jordan")

16.     The Four-Year Transfers to Jordan and Two-Year Transfers to Jordan were used by Jordan to pay for personal real estate or other personal expenses such as hotels, travel and dining which were not attributable to the Debtors' business operations or to reasonable compensation for Jordan's employment with the Debtors.

17.     During the period of October 4, 2008 through the Petition Date, the Debtors transferred a total of $49,934.00 to Stefany (the "Four-Year Transfers to Stefany"), an alleged employee of the Debtors who actually performed little or no services for the Debtors.

18.     The Four-Year Transfers to Stefany were made to or for Stefany's benefit to pay personal expenses and to pay health insurance premiums for coverage to which she was not entitled.  These transfers were not attributable to the Debtors' business operations or to reasonable compensation for Stefany's employment with the Debtors.

19.     The Debtors received less than the reasonably equivalent value in exchange for (i) the Four-Year Transfers to Jordan; (ii) the Two-Year Transfers to Jordan; and (iii) the Four-Year Transfers to Stefany.

20.     The Two-Year Transfers to Jordan and the Four-Year Transfers to Jordan were made for the benefit of an insider and outside the ordinary course of business.

21.     Jordan was the transferee for whose benefit the Two-Year Transfers to Jordan and the Four-Year Transfers to Jordan were made.

22.     Stefany was the transferee for whose benefit the Four-Year Transfers to Stefany were made.

23.     The Four-Year Transfers to Stefany were made for the benefit of an insider.

C.. *Contested Facts Asserted by the Defendants*

24.     All alleged transfers in the Adversary Proceeding were for full and fair consideration.

25.     The transfers represented among other things compensation to Jordan and Stefany.

26.     Stefany worked for the Debtors and provided valuable services for which she was entitled to compensation.

27.     The Settlement Agreement precludes the Trustee's claims.

.

### III.     DISCOVERY PLAN PURSUANT TO FED. R. CIV. P. 26(f)

*A.  Certification*

Undersigned counsel certify that they have considered the nature and basis of the Parties' claims, counterclaims and defenses and possibilities for achieving a prompt settlement or other resolution of the case and have developed the following proposed discovery plan.  Counsel further certify that they have forwarded a copy of this report to their clients.

*B.  Discovery Plan*

### JOINT PROPOSED DISCOVERY PLAN

1.     Initial Disclosures.  The Parties have served each other with initial disclosures pursuant to Rule 26(a)(1).

2.     Amendments To Pleadings.  The Parties do not expect to seek any further amendments to the Pleadings.

3.     Discovery Plan.  The Parties' proposed joint discovery plan includes all topics covered by Rule 26(f), and provides that:

(a) All fact discovery, including answers to interrogatories, requests for production of documents and request for admissions shall be served so that all responses will be due on or before October 15, 2015;

8

(b) Reports from experts as required by Fed. R. Civ. P. 26(a)(2)  shall be issued

by the party with the affirmative burden of proof by November 15, 2015.  Any

rebuttal expert reports shall be issued by December 15, 2015.  All expert

depositions must be noticed and completed by January 15, 2016;

(c)  Any case dispositive motions, pursuant to the Federal Rules of Civil

Procedure, shall be served and filed with the Court on or before January 30, 2016.

Replies shall be filed within twenty (20) days of service of the motion, and

surreplies, if any, shall be filed within ten (10) days of receipt of a reply

(d) At this time there are no issues regarding disclosure or discovery of

electronically stored information; the Parties have agreed to produce

electronically stored information, such as emails, in .pdf (portable document

format) form;

(e)  At this time, the Parties do not anticipate any issues regarding claims of

privilege or of protection as trial-preparation materials;

(f)  Pursuant to Fed. R. Civ. P. 26(f)(3)(F), the Parties do not request that the

Court enter any other orders at this time

(g) Pursuant to Fed. R. Civ. P. 26(f)(3)(E) the Parties request that no changes

should be made to the limitations on discovery imposed under the Federal or

Local rules.  The Parties also agree that discovery will be needed on, but not

limited to, the following subjects:

      i.   The Jordan Two-Year Transfers;

      ii.   The Jordan Four-Year Transfers;

      iii.   The Stefany Four-Year Transfers;

iv.  The State Court Action;

v.  The Settlement Agreement in the State Court Action;

vi.  The satisfaction of conditions and obligations in the Settlement Agreement;

vii.  The elements of the Plaintiff's claims;

viii.  The elements of the Defendants' counterclaims;

ix.  The affirmative defenses asserted by the Defendants;

x.  The affirmative defenses asserted by the Plaintiff; and

xi.  The Pinto Action.

The Parties may move to amend this discovery plan as is reasonably necessary, including expanding the scope of discovery beyond those issues specifically enumerated herein, subject to the approval of the Court. The Defendants contend that some of the requested discovery should be stayed pending the resolution of its Motion for Summary Judgment.

## IV.    RULE 26(f) CONFERNCE

Counsel for the Parties conferred by telephone on July 1, 2015 at 10:00 a.m.

## V.    ADDITIONAL PLEADINGS OR MOTIONS

The Defendants anticipate filing a motion for summary judgment within thirty (30) days of the filing of this pleading. The Motion for Summary Judgment will be based upon among other things the plain language of the Settlement Agreement. To avoid unnecessary expenses, the Defendants will also move to stay discovery and the Trustee will oppose since the Defendants have already taken the Trustee's deposition and will be completing the Trustee's accountant's deposition by months end. The Trustee will oppose the summary judgment and may file a cross motion for summary judgment depending upon the facts developed through discovery.

## VI.  PARTIES' GOOD FAITH ESTIMATE OF LENGTH OF TRIAL

The Parties estimate that time required for a trial of the claims asserted in this adversary proceeding will be 1-3 days.

## VII.  PARTIES CONSENT TO FINAL ORDERS AND JUDGMENTS

The Plaintiff consents to the Court's entry of final orders and judgments in this adversary proceeding pursuant to 28 U.S.C. § 157(b)(1).  The Defendants do NOT consent to the entry of final orders and judgment in the adversary proceeding.  The Defendants filed a Motion to Withdraw Reference which was denied without prejudice and intend to re-file the Motion.


Respectfully Submitted,

MARK G. DEGIACOMO, CHAPTER 7 TRUSTEE
OF THE UPPER CRUST, LLC ET Al.

By his attorneys,

/s/ Kevin F. Yetman
Thomas S. Vangel, Esq. (BBO# 552386)
tvangel@murthalaw.com
Ryan M. MacDonald, Esq.  (BBO# 654688)
rmacdonald@murthalaw.com
Kevin F. Yetman, Esq.  (BBO# 688631)
kyetman@murthalaw.com
Murtha Cullina LLP
99 High Street
Boston, MA 02110
(617) 457-4000

Dated: July 20, 2015

JORDAN AND STEFANY TOBINS,

By their attorneys,

/s/ Richard Briansky
Richard E. Briansky (BBO# 632709)
rbriansky@mccarter.com
McCarter English LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6568

Dated: July 20, 2015

**CERTIFICATE OF SERVICE**

I, Kevin F. Yetman, hereby certify that this document was filed through the Court's ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kevin F. Yetman