UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
                                                    )
In re:                                       )
                                                    )        CHAPTER 7
THE UPPER CRUST, LLC, et al.,[1]    )        CASE NO. 12-18134-HJB
                                                    )
              Debtors.         )
_____)
MARK G. DEGIACOMO,                )
CHAPTER 7 TRUSTEE OF THE UPPER  )
CRUST, LLC et al.,                           )        ADVERSARY PROCEEDING
                                                    )        NO. 14-01163
              Plaintiff,         )
v.                                                        )
                                                    )
JORDAN TOBINS and                    )
STEFANY TOBINS,                           )
                                                    )
              Defendants.      )
_____)

## TRUSTEE'S OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and LR, D.Mass. 56.1, made applicable to this proceeding by Fed. R. Bankr. P. 7056 and MLBR 7056-1, the Plaintiff, Mark G. DeGiacomo, the duly appointed Chapter 7 trustee of the estates of the Upper Crust, LLC, et al., (the "Plaintiff" or "Trustee"), hereby responds to and opposes Jordan Tobins' and Stefany Tobins' (collectively, the "Defendants" or "Tobins") Motion for Summary Judgment that was filed with the Court on

---

[1] The other Chapter 11 cases substantively consolidated with The Upper Crust, LLC (Case No. 12-18134) are The Upper Crust - Back Bay, LLC (Case No. 12-18135), The Upper Crust-Fenway, LLC (Case No. 12-18136), The Upper Crust-Harvard Square, LLC (Case No.12-18137), The Upper Crust-Hingham, LLC (Case No.12-18138), The Upper Crust-Lexington, LLC (Case No. 12-18139), The Upper Crust-State Street, LLC (Case No. 12-18140), The Upper Crust - South End, LLC (Case No. 12-18142), The Upper Crust - Pennsylvania Avenue, LLC (Case No. 12-18143), The Upper Crust – D.C., LLC (Case No. 12-18148), The Upper Crust - Waltham, LLC (Case No. 12-18144), The Upper Crust-Watertown, LLC (Case No. 12-18145), The Upper Crust-Wellesley, LLC (Case No. 12-18146), and JJB Hanson Management, Inc. (Case No. 12-18147) (collectively, the "Debtors").

1

December 18, 2015 (the "Motion for Summary Judgment"). For the reasons set forth below, the Trustee's claims are not precluded by a purported general release in the Settlement Agreement[2] executed by the Upper Crust and JJB prior to the Petition Date. In support of this Opposition, the Trustee is filing herewith the Trustee's Statement of Additional Material Facts in Support of his Opposition to the Defendants Motion for Summary Judgment (collectively, the "Trustee's Statement of Facts") and supporting affidavits.

## INTRODUCTION

The crux of the Defendants' argument their Motion for Summary Judgment is that the general release contained in the Settlement Agreement relating to that the prepetition Superior Court action brought by Upper Crust and JJB and others against the Defendants (the "Tobins Release") precludes the Trustee's claims. Essentially, the Defendants assert that the Trustee is bringing the same claims against the same parties that the Upper Crust purportedly previously released pursuant to the Tobins Release. The Defendants argue that the Tobins Release is enforceable as a matter of law even if the Defendants did not comply with the terms of the Settlement Agreement because the Settlement Agreement is a "substituted contract."

The Motion for Summary Judgment should be denied because the record establishes that the Release is not enforceable against the bankruptcy estate because the Settlement Agreement was never valid nor fully consummated.

First, the Settlement Agreement and the Tobins Release are not enforceable against the bankruptcy estate because Superior Court approval of the modification of the Tobins Injunction and the Huggard/Higgins Injunction orders was necessary to effectuate (1) the $250,000 payment

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed such capitalized terms set forth in the Trustee's Response to Defendants' Undisputed Statement of Material Facts and the Trustee's Statement of Additional Material Facts in Support of his Opposition to the Defendants Motion for Summary Judgment.

2

6765333v3

Jordan Tobins made to the Debtors on September 28, 2012 (the "Tobins Payment") and (2) the respective Ownership Transfers and Pledge Transfers (both defined below) between Jordan Tobins, Huggard and Higgins required under paragraphs 18 and 27 of the Settlement Agreement. The necessary Superior Court approval was never obtained. Further, the Tobins Payment was not valid because Ditmars, the party that advanced the $250,000 to Jordan Tobins for the Tobins Payment, commenced an adversary proceeding against the Debtors three weeks after the Petition Date seeking to impose a constructive trust on the Tobins $250,000 Payment and recover the funds from the bankruptcy estate. This adversary proceeding is still pending before this Court (A.P. No. 12-01293). [3]

Second, several material conditions precedent to the enforceability of the Tobins Release contained in the Settlement Agreement to were never satisfied. The following conditions precedent in the Settlement Agreement never occurred: (1) court approved modification of the Tobins and Huggard/Higgins Injunctions in connection with the Tobins Payment and the ownership and pledge transfers in paragraph 18 and 27 of the Settlement Agreement; (2) the execution and delivery of the Redemption Agreements attached as Exhibits A-E to the Settlement Agreement so that Jordan Tobins became the 100% owner of Coleman, Coletrain and Cocobling and Huggard and Higgins became the 100% owners of Upper Crust and JJB (collectively, the Ownership Transfers"); (3) the execution and delivery of the proposed Pledge Agreements referenced in paragraph 27 and attached as Exhibits F-H to the Settlement Agreement by Jordan Tobins, Huggard and Higgins with respect to their ownership interests in

---

[3] In paragraph 8 of Tobins' Statement of Facts, the Defendants reference the existence of a dispute resolution provision in the Settlement Agreement. As discussed herein, Jordan Tobins, Huggard and Higgins failed to obtain the necessary court approvals required under the Settlement Agreement to effectuate the Tobins Payment and respective transfers between them and to satisfy essential terms and conditions of the Settlement Agreement. Therefore, the Settlement Agreement was never valid nor fully consummated. Accordingly, the dispute resolution provision is inapplicable. Furthermore, the Defendants have not moved to dismiss or stay this adversary proceeding on the basis of the dispute resolution provision in the Settlement Agreement.

3

Coleman, Coletrain, Cocobling, the Upper Crust and JJB as security for their respective obligations under the Settlement Agreement (collectively, the "Pledge Transfers"); and (4) Jordan Tobins' satisfaction of his payment obligations with respect to the liability of the Debtors in the Pinto Litigation and the wage claim asserted by the Department of Labor ("DOL"). These conditions were material to the effectiveness of the Settlement Agreement and, therefore, the failure to satisfy them rendered the Settlement Agreement a nullity and the Tobins Release void and unenforceable.

Third, even if this Court is not persuaded that the Settlement Agreement is (1) invalid based on the failure to obtain necessary Superior Court approvals with respect to transfers or (2) that the Settlement Agreement was never consummated due to the parties failure to satisfy material conditions precedent, the reasonable time for performing conditions precedent under a time is of the essence clause has passed. Therefore, the Settlement Agreement cannot be consummated and any performance obligations of the Trustee under the Settlement Agreement with respect to the Tobins Release have been extinguished.

Alternatively, to the extent that this Court finds that it cannot rule as a matter of law on the record before it that the Settlement Agreement and Tobins Release are unenforceable as a matter of law, material disputed facts remain concerning whether (1) the parties intended (a) the Settlement Agreement to be a substituted contract and (b) the Tobins Release to become effective immediately upon execution of the Settlement Agreement or delayed subject to the satisfaction of a condition precedent; (2) Jordan Tobins had the authority to deliver legal title to the Tobins Payment; and (3) whether the Debtor received legal and equitable ownership rights in the $250,000 Tobins Payment in light of the claims in the Ditmars Complaint and the violation of the Tobins Injunction.

4

6765333v3

## SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "a party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists." E.E.O.C. v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 602-03 (1st Cir. 1995). "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Once the moving party has satisfied its burden, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine, triable issue." In re McCabe, 345 B.R. 1, 5 (D. Mass. 2006).

Summary judgment must be denied if "there is enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993), citing Anderson, 477 U.S. at 249. To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact. See Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995). A fact is "material" if it potentially could affect the suit's outcome. Rodríguez–Rivera v. Federico Trilla Regional Hosp. of Carolina, 532 F.3d 28, 30 (1st Cir. 2008); see Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 187 (1st Cir. 1997); see Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). When all is said and done, the Court

6765333v3

"must 'view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995), citing Griggs–Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

Furthermore, issues of credibility are not a proper subject on summary judgment; in fact, "any such credibility determinations are for the factfinder at trial, not for the court at summary judgment." Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999). "Consequently, when the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true." Fraser & Wise, P.C. v. Primarily Primates, Inc., 966 F.Supp. 63, 70 (D. Mass. 1996) (internal quotations omitted).

## ARGUMENT

I. **The Settlement Agreement and Tobins Release are Invalid Because Court Approved Modification of the Tobins Injunction and the Huggard/Higgins Injunction Orders was Not Obtained and Ditmars Has Challenged the Debtor's Title to the Tobins Payment**

"In general, illegality in a contract is a defen[s]e only because it is against public policy that the court should be called upon to enforce contracts that the parties have been expressly or impliedly forbidden by law to make or to perform." Nussenbaum v. Chambers & Chambers Inc., 322 Mass. 419, 421-422 (1948); see also McLaughlin v. Amirsaleh, 65 Mass. App. Ct. 873, 881 (2006). "It is settled that a contract in violation of law or public policy will not be enforced. McLaughlin v. Amirsaleh, 65 Mass. App. Ct. at 880-881.

The Tobins Payment violated the Tobins Injunction and the Ownership Transfers and Pledge Transfers required under the Settlement Agreement would violate both the Tobins Injunction and the Huggard and Higgins Injunction. Jordan Tobins, Huggard and Higgins knew that Superior Court approval was required to effectuate the Tobins Payment, Ownership

6

6765333v3

Transfers and Pledge Transfers because (1) paragraphs 18 and 27 of the Settlement Agreement obligated the parties to cooperate in obtaining any necessary court approvals (MacDonald Aff., Exhibit A); and (2) Jordan Tobins, Huggard and Higgins received notice of the entry of the injunctions as parties to the Pinto Litigation.  Notwithstanding this knowledge, Jordan Tobins made the $250,000 Tobins Payment in direct violation of the Tobins Injunction.  (Trustee's Statement of Facts, ¶ 18).  This payment made in violation of the Injunction was not valid.

Paragraphs 18 and 27 of the Settlement Agreement imposed an obligation on Jordan Tobins, Huggard and Higgins to cooperate in obtaining any necessary court approvals. (MacDonald Aff., Exhibit A).  Accordingly, the parties recognized that the Tobins Payment, Ownership Transfers and Pledge Transfers required Superior Court approval because of the injunctions.   As of the date of the Settlement Agreement Jordan Tobins and Huggard and Higgins were subject to the terms of the Tobins Injunction and Huggard/Higgins Injunction, respectively. (Trustee's Statement of Facts, ¶ 17; Lis-Riordan Aff., Exhibit A and B).  The Tobins Injunction enjoined Jordan Tobins from:

> …transferring his personal ownership or interest in any assets, regardless of whether those assets are owned solely by him or jointly with other persons, until further order of this Court.  The assets covered by this order include any ownership or interest in ….The Upper Crust, LLC (or related LLC's, corporations, partnerships, or other entities), or any other such assets with a cash or fair market value of greater than $2,500.  This order shall continue in effect until otherwise ordered by the Court.

(Lis-Riordan Aff., Exhibit A).  The Huggard/Higgins Injunction enjoined Huggard and Higgins from:

> … transferring ownership or interest in any assets except for expenditures required in the ordinary course of business, regardless of whether those assets are owned solely by them or jointly with other persons, until further order of this Court.

(Lis-Riordan Aff., Exhibit B).  Neither Jordan Tobins, Huggard or Higgins made any attempt to obtain Superior Court approval in the Pinto Litigation to modify the injunctions prior to, after or

7

6765333v3

in connection with the Tobins Payment, Ownership Transfers or Pledge Transfers.[4] (Trustee's Statement of Facts, ¶ 16). Nevertheless, Jordan Tobins' made $250,000 to the Upper Crust in direct violation of the Tobins Injunction. (Trustee's Statement of Facts, ¶ 18). Accordingly, the Tobins Payment was not a valid payment to the Debtor's under the Settlement Agreement because it was done without a court approved modification of the Tobins Injunction.[5] See National Merchandising Corp. v. Leyden, 370 Mass. 425. 432 (1976) (court held that a knowing violation of an injunction subjects violator (and those that assist the violator) to civil and criminal proceedings of contempt).

The Tobins Payment, the Ownership Transfers and the Pledge Transfers were the primary consideration called for under the Settlement Agreement and were critical to the to the corporate divorce that the parties were seeking to achieve through the Settlement Agreement. The delivery of this consideration was subject to Superior Court approved modification of the Tobins Injunction and the Huggard/Higgins Injunction. (Trustee's Statement of Facts, ¶ 6). Despite the fact that the Settlement Agreement imposed an obligation on the parties to cooperate in obtaining any necessary court approvals in connection with the delivery of this consideration, Superior Court approval was not sought nor obtained prior to or following the execution of the Settlement Agreement. (MacDonald Aff., Exhibit A; Lis-Riordan Aff., ¶¶ 9 and 11). Because court approval was not obtained, the Settlement Agreement is not valid. Accordingly the general release of the Defendants in the Settlement Agreement is not enforceable against the bankruptcy estate.

---

[4] Counsel to the Pinto Creditors has stated that neither Jordan Tobins, Huggard nor Higgins requested that the Pinto Creditors consent to the Tobins Payment or the Ownership Transfers and Pledge Transfers. (Lis-Riordan Aff., ¶ 9).

[5] The parties specifically provided in paragraph 18(d) of the Settlement Agreement that if the $250,000 was not paid by October 1, 2012 that the Settlement Agreement shall be null and void. (MacDonald Aff., Exhibit A).

6765333v3

If the Court does not deem the Settlement Agreement invalid as a result of the Tobins Payment being made in violation of the Tobins Injunction and the failure of Jordan Tobins Huggard and Higgins to obtain Superior Court approval of the transfers in the Settlement Agreement, the Tobins Payment should be deemed invalid in light Ditmars' adversary complaint to recover the Tobins Payment.  Shortly after the Petition Date, Ditmars filed an adversary complaint in the Debtors' cases seeking to impose a constructive trust on the $250,000 payment and recover the funds from the bankruptcy estate. (MacDonald Aff., Exhibit B).  The Ditmars Complaint alleges that it advanced the $250,000 for the Tobins Payment on the condition that Jordan Tobins obtain an agreement from the Debtors to use the $250,000 payment to pay ZVI Construction Company ("ZVI"), who was actively litigating with the Debtors.  (Id.).  The Settlement Agreement did not provide that the Tobins Payment was earmarked for payment to settle ZVI's claims against the Debtors.  (MacDonald Aff., Exhibit A)   The allegations in Ditmars' Complaint at minimum raise a factual question of whether Jordan Tobins had the authority to deliver legal title to the Tobins Payment and whether the Debtor received legal and equitable ownership rights in the $250,000 Tobins Payment.  While the Trustee acknowledges that the Debtors received the Tobins Payment, the Trustee does not concede that this payment of the $250,000 satisfied the requirements of paragraph 18 or otherwise constituted valid payment consideration under the Settlement Agreement given the Tobins Injunction and Ditmars' competing claim to it.

Because Superior Court approval was not obtained in connection with the Tobins Payment, Ownership Transfers and Pledge Transfers, the Settlement Agreement was invalid and the Tobins Release is not enforceable against the bankruptcy estate.  Moreover, because of the allegations asserted in the Ditmars Complaint, factual questions remain as to whether Jordan

9

Tobins delivered and the Debtors had legal and equitable ownership of the $250,000 Tobins Payment at the time it was made to the Debtors. Accordingly, for these reasons the Motion for Summary Judgment should be denied.

> II. **The Parties Never Performed or Satisfied Conditions Precedent Necessary to the Enforceability of the Release**

The Settlement Agreement may not be enforced because it was conditional upon the performance of material obligations that were never performed. "A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract." Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45 (1991); see also Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420-21 (2005). "If a condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." Id. Furthermore, "words often used to create a condition precedent are 'on condition that,' 'provided that,' [and] 'if'". Massachusetts Mun. Wholesale Elec. Co., 411 Mass. at 46.

Paragraph 28 of the Settlement Agreement contains the Tobins Release. (Trustee's Statement of Facts, ¶ 10). However, the Tobins Release specifically states at the outset that it was "Subject to the foregoing…." (Trustee's Statement of Facts, ¶ 11). Therefore, consistent with Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, the Tobins Release was conditioned upon the satisfactory completion by Jordan Tobins of, among other things, the Tobins Payment, Ownership Transfers and Pledge Transfers as set forth in paragraphs 18, 22, and 27 of the Settlement Agreement. (Id.). The record here establishes that these conditions were never satisfied. Therefore, the Trustee contends that the Settlement Agreement was never consummated and the Tobins Release in the Settlement Agreement unenforceable against the bankruptcy estate.

### A. The Parties Never Effectuated the Tobins Payment, the Ownership Transfers and the Pledge Transfers

Paragraph 18 of the Settlement Agreement addresses the requirements of the Tobins Payment and Ownership Transfers. Paragraph 18 provides as follows:

> …18.  Tobins will pay or cause to be paid, by cash, bank check or wired funds, $250,000 to the Upper Crust, said payment to be made no later than October 1, 2012 (the "Closing Payment") and shall be made to an account or payee as designated by the Upper Crust in writing. Upon the receipt of said Closing Payment:
>
> a. Tobins shall receive 100% ownership of Coleman, Coletrain and Cocobling, including the domain names associated with each (including theuppercrustpizzeria.com/) and the assets owned by said companies. As part of this transaction, Huggard/Higgins will provide Tobins with full access to his company email account. Thereafter, no party will attempt to access, use or interfere with the email account of any other party, whether that account has been used for personal or business purposes. Tobins shall not make any reference to or mention of Huggard/Higgins anywhere on theuppercrustpizzeria.com or elsewhere in promotional material, but Tobins has no obligation to change any menu items.
>
> b. Higgins/Huggard shall collectively receive 100% ownership of the Upper Crust and JJB.
>
> c. The Litigation shall be dismissed with prejudice, with all rights of appeal waived and each side bearing its own costs and attorneys' fees.
>
> d. In the event that the Closing Payment is not received by the Closing Date, this Agreement shall, at the option of Huggard/Higgins, become null and void.
>
> The Parties agree to cooperate in obtaining any necessary court and/or secured lender approvals to effectuate such transfers and, once achieved, agree to execute the documents attached hereto at <u>Exhibits A-E</u> to make such transfers….

(MacDonald Aff., Ex. A).

The requirements of the Pledge Transfers are set forth in paragraph 27 of the Settlement Agreement, (<u>Id.</u>). Paragraph 27 provides as follows:

11

6765333v3

> …27.     Subject to any required court approvals, Huggard, Higgins and Tobins will secure each of their respective financial obligation (including the obligations regarding debts and liabilities) hereunder by pledging his respective corporate ownership interests to the others (i.e., Tobins will pledge his interest in Coleman, Coletrain and Cocobling, and Huggard and Higgins will pledge their interest in The Upper Crust and JJB) by executing the document attached hereto at <u>Exhibits F-H</u>...

(<u>Id.</u>)

As of the date of the execution of the Settlement Agreement, the Tobins Payment, the Ownership Transfers and the Pledge Transfers would violate the terms of the Tobins Injunction and the Huggard/Higgins Injunction. (Trustee's Statement of Facts, ¶ 18-20). Neither Jordan Tobins, Huggins nor Higgins made any attempt seek Superior Court approval to modify the Tobins Injunction or the Huggard/Higgins Injunction to effectuate the Tobins Payment,[6] Ownership Transfers or Pledge Transfers. (Trustee's Statement of Facts, ¶ 16). As noted above, both paragraph 18 and 27 make explicit reference to the parties obtaining any necessary court approvals and the Settlement Agreement was reached nearly two and a half months prior to the Petition Date. (MacDonald Aff., Ex. A). So there was more than ample time for Jordan Tobins, Huggard and Higgins to obtain the requisite Superior Court approval to modify the injunctions in order to effectuate the Tobins Payment, the Ownership Transfers and the Pledge Transfers.

Moreover, they never even executed any of the required documents necessary to complete the Ownership Transfers or the Pledge Transfers referenced as Exhibits A-E and Exhibit F-H to the Settlement Agreement, respectively. (Trustee's Statement of Facts, ¶ 21). Pursuant to paragraph 18(a), Jordan Tobins was to receive 100% ownership of Coleman, Coletrain and Cocobling. (MacDonald Aff., Ex. A). At the time of the Settlement Agreement, and as reflected in Exhibits A-E to the Settlement Agreement, Huggard and Higgins collectively owned 20% of Coleman and Coletrain respectively, and 66% of Cocobling. (MacDonald Aff.,

---

[6] See Section I, above, for the Trustee's discussion relative to the validity of the Tobins Payment.

6765333v3

Ex. A). Exhibits A-C of the Settlement Agreement represented the respective redemption agreements and assignments of those interests in each of those entities to Jordan Tobins. (MacDonald Aff., Ex. A). Pursuant to paragraph 18(b), Higgins and Huggard were to receive 100% ownership of Upper Crust and JJB, which at the time of the Settlement Agreement, and as reflected in Exhibits A-E to the Settlement Agreement, Jordan Tobins owned 45% of Upper Crust and 33% of JJB. (Id.) Exhibits D-E of the Settlement Agreement represented the redemption agreements and assignments of those interests in each of those respective entities to Higgins and Huggard. (Id.) However, none of these exhibits were ever signed by the Parties. (Id.)

Therefore, one of the main purposes of the Settlement Agreement was that Jordan Tobins would become the sole owner of Coleman, Coletrain and Cocobling, while Huggard and Higgins would become the sole owners of Upper Crust and JJB. Moreover, as security for the parties respective obligations to complete the Ownership Transfers and assume certain debts, as discussed below, the parties were required to pledge their ownership interests to each other pursuant to the Pledge Transfers. These transfers were critical to the corporate divorce the parties were seeking to achieve through the Settlement Agreement. In view of Jordan Tobins, Huggard and Higgins' failure to effectuate the mutual transfer and pledge of their respective ownership interests in the various Upper Crust entities, a critical element of their corporate divorce, it is not surprising that a stipulation of dismissal with prejudice was never filed in the prepetition state court litigation pursuant to paragraph 18(c). (Tobins' Statement of Fact, ¶ 9). Clearly the Upper Crust, JJB and Higgins and Huggard did not intend to effectively release their claims by dismissing the litigation with prejudice before Jordan Tobins, Higgins and Huggard obtained the necessary modifications to the Tobins Injunction and the Huggard/Higgins

13

Injunction to allow Jordan Tobins, Huggard and Higgins to properly transfer their respective ownership interests in Upper Crust, JJB, Coleman, Coletrain and Cocobling.

### B. Jordan Tobins Never Assumed, Paid And Resolved Certain Liabilities As Required Under The Settlement Agreement

Pursuant to paragraph 22 of the Settlement Agreement:

22. Tobins, Coletrain, Coleman and/or Cocobling will assume, pay and resolve the following liabilities as they become due:

a. The class action liability (Pinto, et al. v. Upper Crust, et al., Massachusetts Suffolk Superior Court, Civil Action No. 2010-02847) up to $250,000. Tobins, Coletrain, Coleman and/or Cocobling agree to pay 24% of any amounts paid over $250,000 and, Higgins/Huggard, Upper Crust and/or JJB, will pay 76% of any such excess.

b. The liability to the Department of Labor ("DOL") which may result from the settlement or trial on account of the ongoing investigation by the DOL of the Former Upper Crust Entities.

c. 24% of the liability in the action ZVI Construction Company, LLC v. The Upper Crust, LLC et al., Massachusetts Superior Court, Civil Action No. 2012-1369, with Huggard/Higgins, Upper Crust and/or JJB paying 76% of such liability.

(MacDonald Aff., Ex. A).

Jordan Tobins has not assumed, paid, and resolved any portion the class action liability of the Upper Crust and JJB in the Pinto Litigation or the Debtors' liability in connection with the DOL claim in accordance with what is required by the Settlement Agreement. (Trustee's Statement of Facts, ¶¶ 27 and 29). On November 18, 2013, Jordan Tobins entered into a Settlement Agreement with the Pinto Creditors in connection with the Pinto Litigation pursuant to which he agreed to pay $150,000 to resolve only those claims asserted against him individually (the "Pinto Settlement"). (Trustee's Statement of Facts, ¶ 25). The Pinto Settlement did not resolve any liability of the Upper Crust and the Pinto Creditors continue to assert a proof of claim in the amount of $3,069,590.00 against the Debtors' bankruptcy estate (Trustee's

Statement of Facts, ¶¶ 27 and 23). Jordan Tobins has not assumed or paid any liability on behalf of the Upper Crust and JJB, to whom he agreed to pay the first $250,000 of liability. (Trustee's Statement of Facts, ¶ 27).

Similarly, pursuant to paragraph 22 of the Settlement Agreement Jordan Tobins was to "assume, pay and resolve" entirely Upper Crust's liability to the DOL as a result of a settlement or trial on account of the DOL's ongoing investigation. (MacDonald Aff., Ex. A). Jordan Tobins has provided no evidence that he has assumed, paid and resolved any of Upper Crust's liability with respect to the DOL. (Trustee's Statement of Facts, ¶ 29). To the contrary, the DOL has an outstanding proof of claim in the amount of $883,481.52 against the bankruptcy estate. (Lawson Aff., Ex. A). Accordingly, Jordan Tobins did not satisfy his obligation under 22(b) of the Settlement Agreement.

The conditions set forth in paragraphs 18, 22 and 27 were never performed by Jordan Tobins Huggard and Higgins and were conditions precedent to the enforceability of the general release. Accordingly, the Tobins Release was never effective because those foregoing settlement terms and conditions were not satisfied and the Settlement Agreement was never consummated. Accordingly, the Motion for Summary Judgment should be denied.

    **C.**    **The Enforceability of the Tobins Release was Conditional on the Satisfaction of Conditions Precedent in the Settlement Agreement**

The Defendants cite P.L.A.Y., Inc. v. Nike, Inc., 1 F.Supp. 2d 60 (D. Mass 1998) in support of their proposition that the Settlement Agreement constitutes a substituted contract and an immediate discharge of the claims compromised in the Settlement Agreement. (See Motion for Summary Judgment). In reliance on the holding in P.L.A.Y., the Defendants assert that the Tobins Release became effective immediately upon execution of the Agreement. (Id. at page 11). The holding in P.L.A.Y. is distinguishable on the facts of this case. In P.L.A.Y., the

15

6765333v3

settlement agreement in question contained an immediate release of possible claims and was not conditional on the future performance of obligations as we have here. P.L.A.Y, Inc., 1 F.Supp. 2d 60, 64. The Court in P.L.A.Y. found "[t]here is nothing in the Agreement to suggest any reason for a delayed application of the discharge of NIKE's liability or that the discharge was conditional upon the occurrence of a future event." Id. Here, as detailed above, the Settlement Agreement was conditional upon the performance of various obligations contained in Paragraphs 18, 22 and 27. Unlike P.L.A.Y., the discharge of the Tobins' liability was not a present and immediate release of claims but was delayed and expressly conditioned upon the satisfactory performance of the obligations in the Settlement Agreement. As such, P.L.A.Y., Inc. v. Nike, Inc., is distinguishable and this Court should weigh it accordingly.

### III.    The Reasonable Time For Performance Has Expired

The Settlement Agreement was executed as of July 31, 2012, approximately 3 ½ years ago. As detailed above, during this time, other than Jordan Tobins' invalid attempt to make the Tobins Payment, Jordan Tobins, Huggard and Higgins have ignored their obligations under the Settlement Agreement. The parties have made no attempt to obtain the necessary Superior Court approval of the transfers required under the Settlement Agreement or to satisfy their conditions precedent necessary to consummate the Settlement Agreement. The parties inactions with respect to their obligations under the Settlement Agreement constitutes a blatant violation of the "time is of the essence" in paragraph 39 of the Settlement Agreement. Paragraph 39 of the Settlement Agreement states in relevant part:

> …[T]he Parties agree to cooperate and execute any document or take any additional actions consistent with the terms of this Agreement, and it is expressly acknowledged that such obligations are expected and that time is of the essence in executing such documents to taking such action.

(MacDonald Aff., Ex A).

"Under Massachusetts law, parties will be held to the deadlines they have imposed upon themselves when they agree in writing that time is to be of the essence." Owen v. Kessler, 56 Mass. App. Ct. 466, 469 (2002). Additionally, "the deadline is a condition subsequent, and if the condition subsequent is not met…or waived, then the parties' obligations to each other are extinguished." Id. Here, the Settlement Agreement does contain a time is of the essence clause, albeit without a referenced deadline. (MacDonald Aff., Ex A). While there is no specific deadline for performance under the Settlement Agreement, it has been approximately 3 ½ years since the execution of the Settlement Agreement and the parties have ignored and abandoned their obligations under the Settlement Agreement. After a 3 ½ year delay in performance the Defendants cannot now claim that their obligations under the Settlement Agreement are still eligible for performance. Therefore, the performance obligations of the parties to each other under the Settlement Agreement, including any obligations under the general release to the Defendants, have been extinguished. Accordingly, the Defendants Motion for Summary Judgment should be denied.

### IV. The Trustee is Not Seeking to Rescind the Settlement Agreement

The Defendants assert that the Trustee is seeking to rescind the Settlement Agreement which requires the Trustee to return the Tobins Payment as a condition precedent to asserting the claim. See Fleming v. U.S. Postal Service AMF O'Hare, 27 F. 3d 259, 262 (7th Cir. 1994). The Trustee is not seeking to rescind the Settlement Agreement. The Settlement Agreement and the Tobins Release set forth therein is not enforceable against the bankruptcy estate because the Settlement Agreement was never valid nor fully consummated based the fact that the Tobins Payment was invalid, the parties failure to obtain necessary Superior Court approval of transfers required under the agreement, the parties failure to satisfy material conditions precedent and the

6765333v3

parties were excused from performance under the agreement prior to the commencement of this action. Therefore, because the Settlement Agreement was never a valid and enforceable contact, the Trustee cannot rescind something that legally did not exist and which the parties, by their inaction, have been excused from performance thereunder.

For the reasons set forth above in Sections I-IV of the Trustee's Opposition, the record before this Court supports a denial of the Motion for Summary Judgment on the grounds that the Tobins Release is not enforceable against the bankruptcy estate as a matter of law.

### V. **Alternatively, There are Material Factual Issues Which Necessitate Denial of the Motion**

To the extent that this Court decides that it cannot rule as a matter of law that the Tobins Release is not enforceable against the bankruptcy estate because the Settlement Agreement was never valid nor fully consummated for the reasons discussed above in Sections I-V, material issues of fact would remain that cannot be resolved through summary judgment. Those material disputed facts are whether (1) the parties intended (a) the Settlement Agreement to be a substituted contract and (b) the Tobins Release to become effective immediately upon execution of the Settlement Agreement or delayed subject to the satisfaction of a condition precedent; (2) Jordan Tobins had the authority to deliver legal and equitable title to the Tobins Payment despite the Tobins Injunction and Ditmars claim to it; and (3) whether the Debtor received legal and equitable ownership rights in the Tobins Payment in light of Ditmars claims to it and the Tobins injunction. Accordingly, in the alternative, this Court should enter an order denying the Motion for Summary Judgment due to the above referenced disputed material facts.

### **CONCLUSION**

For the reasons set forth herein, Mark G. DeGiacomo, the Chapter 7 Trustee, respectfully requests that this Court deny the Defendants Motion for Summary Judgment.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MARK G. DEGIACOMO, CHAPTER 7 TRUSTEE OF THE UPPER CRUST LLC, ET. AL, |
|  | By his attorneys, |
|  | /s/  Kevin F. Yetman<br>Ryan M. MacDonald, Esq. BBO #654688<br>Kevin F. Yetman, Esq. BBO #688631<br>Murtha Cullina LLP<br>99 High Street, 20th Floor<br>Boston, MA  02110<br>(617) 457-4000 Telephone<br>(617) 482-3868 Facsimile<br>rmacdonald@murthalaw.com |
| Dated: January 29, 2016 | kyetman@murthalaw.com |

**CERTIFICATE OF SERVICE**

I, Kevin F. Yetman, hereby certify that this document was filed through the Court's ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kevin F. Yetman

6765333v3