UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: ) <br> THE UPPER CRUST, LLC, et al.,[1] ) <br> ) <br> ) <br> Debtors. ) <br> ) | CHAPTER 7 <br> CASE NO. 12-18134-HJB |
| MARK G. DEGIACOMO, ) <br> CHAPTER 7 TRUSTEE OF THE UPPER ) <br> CRUST, LLC, et al., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> JORDAN TOBINS and ) <br> STEFANY TOBINS, ) <br> ) <br> Defendants. ) <br> ) | ADVERSARY PROCEEDING <br> NO. 14-01163 |

## AFFIDAVIT OF RYAN M. MACDONALD, ESQ.

I, Ryan M. MacDonald, being duly sworn, hereby depose and state as follows:

1.  I am admitted to the Massachusetts Bar and in good standing. I am a partner with the law firm of Murtha Cullina LLP, counsel for Mark G. DeGiacomo, Chapter 7 Trustee of the Upper Crust, LLC, et al., in the above-captioned proceeding.

2.  I submit this Affidavit in support of the Trustee's Opposition to the Defendants, Jordan Tobins and Stefany Tobins, Motion for Summary Judgment.

---

[1] The other Chapter 11 cases substantively consolidated with The Upper Crust, LLC (Case No. 12-18134) are The Upper Crust - Back Bay, LLC (Case No. 12-18135), The Upper Crust-Fenway, LLC (Case No. 12-18136), The Upper Crust-Harvard Square, LLC (Case No.12-18137), The Upper Crust-Hingham, LLC (Case No.12-18138), The Upper Crust-Lexington, LLC (Case No. 12-18139), The Upper Crust-State Street, LLC (Case No. 12-18140), The Upper Crust - South End, LLC (Case No. 12-18142), The Upper Crust - Pennsylvania Avenue, LLC (Case No. 12-18143), The Upper Crust – D.C., LLC (Case No. 12-18148), The Upper Crust - Waltham, LLC (Case No. 12-18144), The Upper Crust-Watertown, LLC (Case No. 12-18145), The Upper Crust-Wellesley, LLC (Case No. 12-18146), and JJB Hanson Management, Inc. (Case No. 12-18147) (collectively, the "Debtors").

3.    This Affidavit is based upon my personal knowledge and/or uncontroversial administrative matters that I have learned during the course of these proceedings.

4.    Attached hereto as <u>Exhibit A</u> is a true and accurate copy of the Settlement Agreement dated July 31, 2012.

5.    Attached hereto as <u>Exhibit B</u> is a true and accurate copy of the Ditmars Complaint, A.P. No. 12-1293, dated October 19, 2012.

Signed under the penalties of perjury this 29 day of January, 2016.

_____
Ryan M. MacDonald

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

THE UPPER CRUST, LLC, et al.,[1]

            Debtors.

MARK G. DEGIACOMO,
CHAPTER 7 TRUSTEE OF THE UPPER
CRUST, LLC, et al.,

            Plaintiff,

v.

JORDAN TOBINS and
STEFANY TOBINS,

            Defendants.

CHAPTER 7
CASE NO. 12-18134-HJB

ADVERSARY PROCEEDING
NO. 14-01163

DECLARATION RE: ELECTRONIC FILING

PART I- DECLARATION

    I _____Ryan M. MacDonald_____ , hereby declare(s) under penalty of perjury that all of the information contained in my _____Affidavit of Ryan M. MacDonald , Esq._____ (singly or jointly the "Document"), filed electronically, is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

    I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated:  January 29, 2016

                                  (Affiant)  Ryan M. MacDonald

---

[1] The other Chapter 11 cases substantively consolidated with The Upper Crust, LLC (Case No. 12-18134) are The Upper Crust - Back Bay, LLC (Case No. 12-18135), The Upper Crust-Fenway, LLC (Case No. 12-18136), The Upper Crust-Harvard Square, LLC (Case No.12-18137), The Upper Crust-Hingham, LLC (Case No.12-18138), The Upper Crust-Lexington, LLC (Case No. 12-18139), The Upper Crust-State Street, LLC (Case No. 12-18140), The Upper Crust - South End, LLC (Case No. 12-18142), The Upper Crust - Pennsylvania Avenue, LLC (Case No. 12-18143), The Upper Crust -- D.C., LLC (Case No. 12-18148), The Upper Crust - Waltham, LLC (Case No. 12-18144), The Upper Crust-Watertown, LLC (Case No. 12-18145), The Upper Crust-Wellesley, LLC (Case No. 12-18146), and JJB Hanson Management, Inc. (Case No. 12-18147) (collectively, the "Debtors").

6791322v1

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered as of July 31, 2012, by and between Upper Crust, LLC (including the thirteen subsidiaries/operating entities defined below), JJB Hanson Management, Inc., Joshua Huggard, Brendan Higgins, Cocobling, LLC, Daniel Hurley, Jordan Tobins, Coletrain, Inc., Coleman, Inc. and Stefany Tobins (collectively, the "Parties").

WHEREAS, certain of the Parties have been operating the restaurant business known as The Upper Crust and/or The Upper Crust Pizzeria, which business is owned by certain corporate entities, all of which are, in turn, directly or beneficially owned by Jordan Tobins, Joshua Huggard and Brendan Higgins.

WHEREAS, disputes and claims between and among the Parties arose, as set forth in the case Upper Crust, LLC et al. v. Jordan Tobins et al., pending in the Massachusetts Superior Court for Suffolk County, Civil Action No. 12-1346 (the "Litigation");

WHEREAS, the Parties sought to resolve the Litigation, and did so by successfully mediating the matter on July 31, 2012, resulting in a Memorandum of Understanding executed by all Parties, which provided for the execution of this Agreement.

NOW THEREFORE, for good and valuable consideration (including, but not limited to, the covenants and obligations set forth in this Agreement), the receipt and sufficiency of which are hereby acknowledged, the undersigned Parties agree as follows:

### I.   Incorporation of MOU

1.   The terms of the Memorandum Of Understanding executed by the Parties on July 31, 2012 are incorporated herein, as more fully articulated in the terms of this Agreement that follow this paragraph.

**II.**    <u>Definitions</u>

2.    Whenever the term Upper Crust is used, it shall mean and refer to The Upper Crust, LLC, as well as any and all members, managers, shareholders, owners, principals, parents, and subsidiaries (The Upper Crust Back Bay, LLC; The Upper Crust Fenway, LLC; The Upper Crust Harvard Square, LLC; The Upper Crust Hingham, LLC; The Upper Crust Lexington, LLC; The Upper Crust State Street, LLC; The Upper Crust South End, LLC; The Upper Crust Summer Street, LLC; The Upper Crust Waltham, LLC; The Upper Crust Pennsylvania Avenue, LLC; The Upper Crust Watertown, LLC; and The Upper Crust Wellesley, LLC), predecessors, successors and representatives. The term Upper Crust shall not include Coleman, Inc. or Coletrain, Inc., or Jordan Tobins, nor shall the term include the registered trademark, which is addressed separately below.

3.    Whenever the term Cocobling is used, it shall mean and refer to Cocobling, LLC, as well as any and all members, managers, shareholders, owners, principals, parents, subsidiaries, predecessors, successors, and representatives, as defined herein. The term Cocobling shall not include Coleman, Inc. or Coletrain, Inc.

4.    Whenever the term JJB is used, it shall mean and refer to JJB Hanson Management, Inc., as well as any and all shareholders, principals, parents, subsidiaries, predecessors, successors, and representatives. The term JJB shall not include Coleman, Inc. or Coletrain, Inc., or Jordan Tobins.

5.    Whenever the terms Coleman and Coletrain are used, it shall mean and refer to Coleman, Inc., Coletrain, Inc., as well as any and all respective shareholders, principals, parents, subsidiaries, predecessors, successors and representatives. The terms Coleman and Coletrain shall not include Upper Crust, Cocobling or JJB, Huggard and/or Higgins as defined herein.

6.    Wherever the term Former Upper Crust Entities is used, it shall mean and refer to Upper Crust, Cocobling, JJB, Coleman and Coletrain, but shall not include Tobins, Huggard and/or Higgins all as defined herein.

7.    Whenever the term Huggard is used, it shall mean and refer to Joshua Huggard, as well as any and all executors, guardians, trustees, agents and/or representatives of Huggard, as defined herein.

8.    Whenever the term Higgins is used, it shall mean and refer to Brendan Higgins, as well as any and all executors, guardians, trustees, agents and/or representatives of Higgins, as defined herein.

9.    Whenever the term Hurley is used, it shall mean and refer to Daniel Hurley, as well as any and all executors, guardians, trustees, agents, and/or representatives of Hurley, as defined herein.

10.    Whenever the term Tobins is used, it shall mean and refer to Jordan Tobins, as well as any and all executors, guardians, trustees, agents and/or representatives of Tobins, as defined herein.

11.    Whenever the term Stefany Tobins is used, it shall mean and refer to Stefany Tobins, as well as any and all executors, guardians, trustees, agents, and/or representatives of Stefany Tobins, as defined herein.

12.    Huggard and Higgins, as defined herein, will be referred to collectively as "Huggard/Higgins."

13.    Huggard, Higgins, Upper Crust, JJB and Cocobling as defined herein, will be referred to collectively as "Huggard/Higgins Parties."

14.    Tobins, Stefany Tobins, Coleman and Coletrain, as defined herein, will be referred

3

to collectively as the "Tobins Parties."

15.    Collective obligations under this Agreement shall impose joint and several liability on each member of the defined group.

### III.    Ownership And Financial Terms And Responsibilities

16.    There shall be no accounting or any liability for any past expenses, salaries, distributions, etc. incurred by or paid by any of the Former Upper Crusts Entities to Higgins, Huggard, or the Tobins Parties for any period.

17.    There shall be no accounting or any liability for any trademark license fees or royalties owed by any of the Former Upper Crust Entities to Coletrain, nor, in accordance with Paragraph 20, below, shall the Upper Crust have any further or future obligation for any such fees or liabilities.

18.    Tobins will pay or cause to be paid, by cash, bank check or wired funds, $250,000 to the Upper Crust, said payment to be made no later than October 1, 2012 (the "Closing Payment") and shall be made to an account or payee as designated by the Upper Crust in writing. Upon said the receipt of said Closing Payment:

    a.    Tobins shall receive 100% ownership of Coleman, Coletrain and Cocobling, including the domain names associated with each (including theuppercrustpizzeria.com/) and the assets owned by said companies. As part of this transaction, Huggard/Higgins will provide Tobins with full access to his company email account. Thereafter, no party will attempt to access, use or interfere with the email account of any other party, whether that account has been used for personal or business purposes. Tobins shall not make any reference to or mention of Huggard/Higgins anywhere on theuppercrustpizzeria.com or elsewhere in promotional material, but Tobins has no obligation to change any menu items.

    b.    Higgins/Huggard shall collectively receive 100% ownership of the Upper Crust and JJB.

    c.    The Litigation shall be dismissed with prejudice, with all rights of appeal waived and each side bearing its own costs and attorneys' fees.

4

d.  In the event that the Closing Payment is not received by the Closing Date, this
Agreement shall, at the option of Huggard/Higgins, become null and void.

The Parties agree to cooperate in obtaining any necessary court and/or secured lender approvals to
effectuate such transfers and, once achieved, agree to execute the documents attached hereto at
Exhibits A-E to make such transfers. Pending and in the absence of such approval, the Parties
will, upon said Closing Payment, hold the interests to be transferred in trust for the other Party
(i.e., Huggard/Higgins will hold Tobins' Upper Crust and JJB interests, and Tobins will hold the
Huggard/Higgins' Coleman, Coletrain and Cocobling interests) and will operate the respective
business and entities as if such transfers occurred (i.e., Huggard/Higgins will operate the Upper
Crust and JJB as if they had full ownership, voting and control, and Tobins will operate Coleman,
Coletrain and Cocobling as if he had full ownership, voting and control).

19.    Higgins/Huggard shall change the d/b/a name of The Upper Crust to remove
"Upper," but may use the word "Crust" in any new name, without any claim of or related to
trademark infringement.  Such name change will encompass every aspect of The Upper Crust
business, including signage, menus, advertising, social media, website, public listings, letterhead,
etc.  Higgins/Huggard will make such changes within a reasonable time after receipt of the
Closing Payment, not to exceed 60 days thereafter.  Higgins/Huggard and The Upper Crust will
not use the menus, unique recipes, unique pizza names and logo (specifically, the "man on bike"
logo) used by The Former Upper Crust Entities.  Higgins/Huggard and The Upper Crust shall use
a new sauce vendor (not the one currently used by the Former Upper Crust Entities).
Huggard/Higgins shall have the right to use remaining branded inventory and shall have a
reasonable time to effectuate these changes, not to exceed 60 days after the Closing Payment.

20.    Coletrain continues to own "The Upper Crust" trademark USPTO serial number

5

77346810 (registration number 3,836,483) and know how as described in the License Agreement between Coletrain and Upper Crust dated June 23, 2005; which agreement will, upon receipt of the Closing Payment be cancelled and of no further effect. Huggard/Higgins agree to no longer use the aforementioned trademark and know-how in connection with its business, subject to the terms of this Agreement.

21.    Any new stores opened by Higgins/Huggard and The Upper Crust shall not be in the same trade dress as currently exists at the Former Upper Crust Entities locations.

22.    Tobins, Coletrain, Coleman and/or Cocobling will assume, pay and resolve the following liabilities as they become due

a.  The class action liability (Pinto, et al. v. Upper Crust, et al., Massachusetts Suffolk Superior Court, Civil Action No. 2010-02847) up to $250,000. Tobins, Coletrain, Coleman and/or Cocobling agree to pay 24% of any amounts paid over $250,000, and, Higgins/Huggard, Upper Crust and/or JJB, will pay 76% of any such excess.

b.  The liability to the Department of Labor ("DOL") which may result from settlement or trial on account of the ongoing investigation by the DOL of the Former Upper Crust Entities.

c.  24 % of the liability in the action ZVI Construction Company, LLC v. The Upper Crust, LLC et al., Massachusetts Superior Court, Civil Action No. 2012-1369, with Huggard/Higgins, Upper Crust and/or JJB paying 76% of such liability.

23.    Higgins/Huggard will assume, pay and resolve all of the remaining debts and liabilities of the business entities consisting of the Former Upper Crust Entities. Debts and liabilities that are incurred after the date of the Closing Payment will be assumed fully by the respective Parties and entities incurring such liability. To the extent claims are made after the Closing Payment against Cocobling, Coleman, Coletrain, Upper Crust, or JJB which were not made, asserted or known to Huggard/Higgins or Hurley prior to the Closing Payment, the parties agree to cooperate in defending against those claims; and to the extent there are legal costs of

6

defending, settling or paying those claims the Parties agree to equitably apportion those expenses based upon the nature of the claims and the culpability of some or all of the individual Parties, consistent with the terms of this Agreement. In the event the Parties cannot agree to such allocation, the matter will be referred to mediation or arbitration as set forth herein. Tobins, Huggard and Higgins represent that to the best of their knowledge and belief, and other than potential claims by the Massachusetts Attorney General, there are no material claims against any of the Parties which have not yet been asserted but which could be asserted at some time after the execution of this Agreement. In the event any claim is brought by the Massachusetts Attorney General, the parties agree to cooperate in the defense of that action as set forth above.

24.    Huggard/Higgins, Upper Crust and/or JJB shall pay Tobins his current salary and other current benefits to the same extent such payments are made to Huggard/Higgins up until the Closing Payment is received.

25.    Any settlement of claims for which another party has responsibility under this Agreement is subject to the approval of all of the parties. Such approval will not be unreasonably withheld or delayed.

26.    Notwithstanding the foregoing, Tobins agrees to pay any amounts due his grandmother loaned by her to the Former Upper Crust Entities. Huggard agrees to pay any amounts due his father loaned by him to the Former Upper Crust Entities.

27.    Subject to any required court approvals, Huggard, Higgins and Tobins will secure each of their respective financial obligations (including the obligations regarding debts and liabilities) hereunder by pledging his respective corporate ownership interests to the others (i.e., Tobins will pledge his interest in Coleman, Coletrain and Cocobling, and Huggard/Higgins will pledge their interests in The Upper Crust and JJB) by executing the documents attached hereto at

7

Exhibits F-H. Huggard, Higgins and Tobins further agree to indemnify and personally guarantee

any debts for which they are responsible, and which are not discharged in the event that any of

their respective corporate entities (i.e., Coleman, Coletrain and Cocobling for Tobins; and The

Upper Crust and JJB for Huggard/Higgins) file for, or are placed into, bankruptcy.

### IV.    General Releases And Covenants Not To Sue

28.    Subject to the foregoing, the Huggard/Higgins Parties and Hurley do hereby

remise, release and forever discharge the Tobins Parties of and from any and all debts, actions,

causes of, action, suits, accounts, covenants, contracts, omissions, liens, controversies,

agreements, damages, and any and all claims, sums of money, demands and liabilities whatsoever

of every name and nature, both in law and equity, known or unknown, direct or derivative, which

the Huggard/Higgins Parties and/or Hurley now have or ever had against any of the Tobins

Parties, including those claims which were or could have been asserted in the Litigation. The

Huggard/Higgins Parties and Hurley further agree and promise that they will not file, charge,

claim, sue or cause or permit to be filed or charged, any action or claim for damages or other

relief against any of the Tobins Parties for any matter arising from the creation of the earth to the

date of the execution of this Agreement. Nothing in the foregoing release shall relieve the Tobins

Parties of their obligations under this Agreement or for any act occurring after the receipt of the

Closing Payment.

29.    Subject to the foregoing, the Tobins Parties do hereby remise, release and forever

discharge the Huggard/Higgins Parties and Hurley of and from any and all debts, actions, causes

of, action, suits, accounts, covenants, contracts, omissions, liens, controversies, agreements,

damages, and any and all claims, sums of money, demands and liabilities whatsoever of every

name and nature, both in law and equity, known or unknown, direct or derivative, which the

8

Tobins Parties now have or ever had against any of the Huggard/Higgins Parties and Hurley, including those claims which were or could have been asserted in the Litigation. The Tobins Parties further agree and promise that they will not file, charge, claim, sue or cause or permit to be filed or charged, any action or claim for damages or other relief against any of the Huggard/Higgins Parties or Hurley for any matter arising from the creation of the earth to the date of the execution of this Agreement. Nothing in the foregoing release shall relieve the Huggard/Higgins Parties or Hurley of their obligations under this Agreement or for any act occurring after the receipt of the Closing Payment.

### V.    Additional Terms

30.    The Parties may begin implementation of this settlement as of the date of the execution of the Memorandum of Understanding, July 31, 2012, but in so doing may not interfere in the business of the other that will occur after the split described in Paragraph 18, above. Before the Closing Payment is received, and so long as this Agreement is in effect and has not been terminated or otherwise expires, Tobins agrees to allow the Huggard/Higgins Parties to continue to manage the Former Upper Crust Entities, provided that the Huggard/Higgins Parties are satisfying the terms of this Agreement.

31.    Tobins may go to The Upper Crust/JJB offices at a mutually agreeable time during non-business hours to retrieve his personal property.

32.    Any disputes arising under this Memorandum or the final Settlement Agreement shall be resolved as follows:

> Thomas F. Maffei shall mediate any such dispute, and if the matter does not settle, Mr. Maffei shall decide the matter in binding Arbitration. In the event that Mr. Maffei is unable or unwilling to so serve, then the parties shall submit the matter to mediation and or arbitration before the Boston office of JAMS. In the event of arbitration the arbitrator shall make an appropriate award which

9

may include attorney's fees.

33.   The Huggard/Higgins Parties, Hurley and the Tobins Parties agree not to make any disparaging statements about each or any of the other to any third parties, and further agree not to take any action to interfere with the ongoing business ventures of the other (which they acknowledge are and will be competitive).

34.   The terms of this Agreement and the discussions leading up to it are and shall remain strictly confidential, and shall not be disclosed by any of the Parties, other than to attorneys, accountants or financial advisors, and as may be required by law, by order of a court of competent jurisdiction, for a proper business purpose, or as may be agreed to in a writing signed by the opposing Parties hereto.

35.   This Agreement was negotiated in good faith and constitutes a fair and reasonable resolution of this dispute. It is agreed that all obligations called for by this Agreement are not to be construed as an admission of liability whatsoever by or on behalf of any of the Parties.

36.   Each of the Parties hereby acknowledges that the terms of this Agreement are the result of joint negotiation and participation among all of the Parties, each of whom was represented by competent counsel. This Agreement therefore shall be deemed to have been drafted by each and all of the Parties and any ambiguity that is claimed or deemed to exist shall not be interpreted more strongly against any party.

37.   The terms and provisions of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

38.   This Agreement may be executed in as many counterparts as may be convenient or required. All counterparts shall collectively constitute a single instrument, and signature pages may be exchanged by email and/or telecopier provided that they are sent also by first class mail.

Copies of signatures shall be as effective as originals.

39.    This Agreement represents the entire agreement between the Parties and may be amended, supplemented or modified only by a writing signed by both of the Parties. The foregoing notwithstanding, the Parties agree to cooperate and execute any documents or take any additional action consistent with the terms of this Agreement, and it is expressly acknowledged that such obligations are expected and that time is of the essence in executing such documents to taking such action.

40.    The signatories for Parties represent that each respective Party is an operating entity and a going concern, and that each signatory has the requisite authority to enter into and bind his or her respective Party to this Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and seal as follows:

JOSHUA HUGGARD -

Witness:

Date: 8/17/12

BRENDAN HIGGINS -

Witness:

Date:

THE UPPER CRUST (as defined above)

Witness:                                          By:
                                                 Duly authorized agent of
Date: 8/17/12                                    The Upper Crust (as defined above)

JJB (as defined above)

Witness:                                          By:
                                                 Duly authorized agent of
Date: 8/17/12                                    JJB (as defined above)

COCOBLING (as defined above)

Witness: Mary Kircher                            By:
                                                 Duly authorized agent of
Date: 8/17/12                                    Cocobling (as defined above)

11

DANIEL HURLEY –

Witness:

Date: _____

JORDAN TOBINS –

Witness: _____

Date: _8/17/12_

STEFANY TOBINS –

Witness: _____

Date: _8.17.12_

COLEMAN AND COLETRAIN (as defined above)

Witness: _____          By: _____
                                        Duly authorized agent of
Date: _8/17/12_                          Coleman and Coletrain (as defined above)

12

Exhibit A

REDEMPTION AGREEMENT

(Coletrain, Inc.)

This Redemption Agreement (this "Redemption Agreement") is made and entered into effective as of _____, 2012 by and among Coletrain, Inc., a Massachusetts corporation (the "Company"), Jordan S. Tobins ("Tobins"), Brendan F. Higgins, Jr. ("Higgins"), and Joshua Huggard ("Huggard").

A.      Tobins, Higgins and Huggard are the sole stockholders of the Company, with each one of them currently holding, beneficially and of record, the percentage of outstanding common stock, par value $0.01 per share ("Common Stock"):

|         |     |
|---------|-----|
| Tobins  | 80% |
| Higgins | 10% |
| Huggard | 10% |

B.      The Company, Tobins, Higgins, Huggard and certain other individuals and entities are parties to that certain Settlement Agreement and Mutual Release, dated as of _____, 2012 (the "Settlement Agreement").

C.      Pursuant to the Settlement Agreement, the parties thereto have agreed, among other things, that the Company will redeem from each of Huggard and Higgins (each of whom is also referred to hereinafter as an "Assignor") 100% of his respective shares of Common Stock in the Company (each, an "Interest").

D.      Reference is made to the Articles of Organization and By-Laws of the Company, each as in effect as of the date hereof (collectively, the "Governing Documents").

The parties hereto agree as follows:

1.      Redemption.

(a)      Subject to the terms and conditions set forth in this Redemption Agreement, and in consideration of the mutual covenants, obligations and agreements set forth in the Settlement Agreement, the receipt and sufficiency of which is hereby acknowledged, each Assignor hereby assigns, transfers and sets over to the Company such Assignor's Interest, such redemption to be effective as of the date hereof (collectively, the "Redemption") by execution and delivery of the Assignment attached hereto as Exhibit A-1 or Exhibit A-2, as applicable.

(b)      The Company hereby redeems from each Assignor such Assignor's Interest, and hereby relieves each Assignor of any duties, liabilities and obligations to which he is subject under the terms of the Governing Documents, if any, such relief to be effective as of the date hereof. In furtherance of the foregoing, the Company agrees to indemnify and hold

A-1

harmless each Assignor from and against any and all losses, costs, damages, expenses or liabilities arising from or relating to such Assignor's Interest from and after the date hereof.

(c)     After giving effect to the Redemption, Tobins will hold 100% of the outstanding capital stock of the Company, and Higgins and Huggard will respectively hold, beneficially and of record, 0% of the outstanding capital stock of the Company.

(d)     After giving effect to the Redemption, the parties hereto agree that the Company's stock ledger and other books and records will be updated and amended to reflect the Redemption and the respective percentage interests set forth in Paragraph 1(c) above.

2.     Representations and Warranties.

(a)     The Company has all requisite power and authority to enter into this Redemption Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. This Redemption Agreement constitutes a valid and binding agreement of the Company, enforceable against it in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

(b)     Each Assignor, severally and not jointly, represents and warrants to the Company that (i) he holds good and valid title to his Interest, free and clear of all liens, encumbrances, pledges, interests, and adverse claims, whatsoever, (ii) his Interest represents all of the capital stock or other interests in the Company owed beneficially or of record by such Assignor, (iii) such Assignor has all requisite power and authority to enter into this Redemption Agreement, to perform his obligations hereunder and to consummate the transactions contemplated hereby, and (iv) this Redemption Agreement constitutes a valid and binding agreement of such Assignor, enforceable against him in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

3.     Resignation; Termination of Benefits. Effective as of the date of this Redemption Agreement, each Assignor does hereby resign from any and all positions with or in the Company, whether as employee, officer, stockholder or otherwise. Except to the extent expressly set forth in the Settlement Agreement, (a) neither Assignor shall be entitled to any payment of monies in respect of salary, commissions, bonuses, distributions or other remuneration, and (b) neither Assignor shall be entitled to participate in the benefit plans of the Company, if any, or otherwise be entitled to any perquisite or fringe benefit.

4.     Consent. Each of the parties hereto hereby approves of and consents to the matters necessary to effect the redemption, transfer, assumption and other transactions contemplated in this Redemption Agreement, including, without limitation, to the extent required under the Governing Documents and/or the Massachusetts Business Corporations Act (the "Act"). By execution his/her/their execution below, all of the directors of the Company authorize, approve, ratify and confirm this Agreement and the Company's execution, delivery

and performance hereto.  A copy of this Agreement, so executed, shall be inserted into the corporate record books of the Company evidencing said unanimous written consent.

5.     Further Assurances.  Each of the parties from time to time hereafter at the request of any other party and without further consideration shall execute and deliver further instruments of redemption and transfer and take such other actions any other party may reasonably require to more effectively assign and transfer to, and vest in, the Company the Interest and all rights thereto, and to fully implement the provisions of this Redemption Agreement.

6. ·   Severability.  Should any provision of this Redemption Agreement become or be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.

7.     Entire Agreement.  The Settlement Agreement together with the documents, agreements and instrument set forth therein, including this Redemption Agreement, represents the full agreement among the parties hereto and this Redemption Agreement supersedes any other agreements, oral or written, regarding the subject matter hereof, including, without limitation, the Governing Documents.  No provision of this Redemption Agreement may be modified, amended ·or· waived except by written agreement signed by the parties hereto.  In signing this Redemption Agreement, neither Assignor nor the Company relies upon any promise, representation of fact or .law, or other inducement that is not· expressed in this Redemption Agreement or the Settlement Agreement.

8.     Counterparts.  This Redemption Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the · same instrument. Facsimile and .pdf signatures shall be deemed originals for all purposes hereunder.

9.     Governing Law; Jurisdiction.  The Redemption Agreement shall be governed by, . construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

*{Remainder of page left intentionally blank.  Signature page(s) to follow.}* ·

IN WITNESS WHEREOF, the parties hereto have executed this Redemption Agreement as of the date first written above.

COLETRAIN, INC.

By: _____

Name: _____

Title: _____


_____
JORDAN TOBINS, individually


_____
BRENDAN HIGGINS, Jr., individually and as an Assignor


_____
JOSHUA HUGGARD, individually and as as an Assignor

The undersigned, constituting all of the members of the board of directors of Coletrain, Inc. (the "Company"), do hereby resolve that: (a) the form, terms and provisions of the within Redemption Agreement made and entered into effective as of _____ __, 2012 by and among the Company, Jordan S. Tobins, Brendan F. Higgins, Jr., and Joshua Huggard is authorized, approved, ratified and confirmed in all respects, (b) that all actions heretofore taken by any of the Company's officers, directors or any of their respective agents in connection with any of the matters described in the preceding resolutions be, and the same hereby are authorized, approved, ratified and confirmed in all respects, and (c) that the appropriate officers of the Company be, and each of them with full authority to act without the others, hereby is, authorized and directed, in the name and on behalf of the Company, to execute and deliver said Redemption Agreement and to take such additional actions and execute such additional documents and instruments as he, she or they in his, her or their judgment, as applicable, shall deem necessary, desirable or appropriate to carry out the intent and effectuate the purposes of the foregoing resolutions.

_____       _____
Name:                                  Name:


_____       _____
Name:                                  Name:

EXHIBIT A-1 TO REDEMPTION AGREEMENT

(Assignment Separate From Transfer – Higgins)

## ASSIGNMENT SEPARATE FROM TRANSER

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Brendan F. Higgins, Jr. ("Higgins" or "Assignor"), does hereby contribute, sell, assign, transfer, convey and delivery to Coletrain, Inc., a Massachusetts limited liability company (the "Company" or "Assignee"), all of Assignor's shares (the "Transferred Shares") of common stock, par value $0.01 per share (the "Common Stock"), of the Company, standing in Assignor's name on the books of the Company, and Assignor does hereby irrevocably constitute and appoint Assignee or its designee attorney-in-fact to transfer the Transferred Shares on the books and records of the Company.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Transferred Shares ("Certificates"). Assignor accordingly believes that Certificates representing the Transferred Shares were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Transferred Shares or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its directors, officers, stockholders and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the _____, 2012.

_____
BRENDAN F. HIGGINS, JR.

EXHIBIT A-2 TO REDEMPTION AGREEMENT

(Assignment Separate From Transfer - Huggard)

ASSIGNMENT SEPARATE FROM TRANSER

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Joshua Huggard ("Huggard" or "Assignor"), does hereby contribute, sell, assign, transfer, convey and delivery to Coletrain, Inc., a Massachusetts limited liability company (the "Company" or "Assignee"), all of Assignor's shares (the "Transferred Shares") of common stock, par value $0.01 per share (the "Common Stock"), of the Company, standing in Assignor's name on the books of the Company, and Assignor does hereby irrevocably constitute and appoint Assignee or its designee attorney-in-fact to transfer the Transferred Shares on the books and records of the Company.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Transferred Shares ("Certificates"). Assignor accordingly believes that Certificates representing the Transferred Shares were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Transferred Shares or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its directors, officers, stockholders and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the _____, 2012.

_____
JOSHUA HUGGARD

A-8

Exhibit B

REDEMPTION AGREEMENT

(Coleman, Inc.)

This Redemption Agreement (this "Redemption Agreement") is made and entered into effective as of _____, 2012 by and among Coleman, Inc., a Massachusetts corporation (the "Company"), Jordan S. Tobins ("Tobins"), Brendan F. Higgins, Jr. ("Higgins"), and Joshua Huggard ("Huggard").

A.    Tobins, Higgins and Huggard are the sole stockholders of the Company, with each one of them currently holding, beneficially and of record, the percentage of outstanding common stock, no par value per share ("Common Stock"):

| | |
|---|---|
| Tobins | 80% |
| Higgins | 10% |
| Huggard | 10% |

B.    The Company, Tobins, Higgins, Huggard and certain other individuals and entities are parties to that certain Settlement Agreement and Mutual Release, dated as of _____, 2012 (the "Settlement Agreement").

C.    Pursuant to the Settlement Agreement, the parties thereto have agreed, among other things, that the Company will redeem from each of Huggard and Higgins (each of whom is also referred to hereinafter as an "Assignor") 100% of his respective shares of Common Stock in the Company (each, an "Interest").

D.    Reference is made to the Articles of Organization and By-Laws of the Company, each as in effect as of the date hereof (collectively, the "Governing Documents").

The parties hereto agree as follows:

1.    Redemption.

(a)    Subject to the terms and conditions set forth in this Redemption Agreement, and in consideration of the mutual covenants, obligations and agreements set forth in the Settlement Agreement, the receipt and sufficiency of which is hereby acknowledged, each Assignor hereby assigns, transfers and sets over to the Company such Assignor's Interest, such redemption to be effective as of the date hereof (collectively, the "Redemption") by execution and delivery of the Assignment attached hereto as Exhibit A-1 or Exhibit A-2, as applicable.

(b)    The Company hereby redeems from each Assignor such Assignor's Interest, and hereby relieves each Assignor of any duties, liabilities and obligations to which he is subject under the terms of the Governing Documents, if any, such relief to be effective as of the date hereof. In furtherance of the foregoing, the Company agrees to indemnify and hold

harmless each Assignor from and against any and all losses, costs, damages, expenses or liabilities arising from or relating to such Assignor's Interest from and after the date hereof.

(c)     After giving effect to the Redemption, Tobins will hold 100% of the outstanding capital stock of the Company, and Higgins and Huggard will respectively hold, beneficially and of record, 0% of the outstanding capital stock of the Company.

(d)     After giving effect to the Redemption, the parties hereto agree that the Company's stock ledger and other books and records will be updated and amended to reflect the Redemption and the respective percentage interests set forth in Paragraph 1(c) above.

2.     Representations and Warranties.

(a)     The Company has all requisite power and authority to enter into this Redemption Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. This Redemption Agreement constitutes a valid and binding agreement of the Company, enforceable against it in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

(b)     Each Assignor, severally and not jointly, represents and warrants to the Company that (i) he holds good and valid title to his Interest, free and clear of all liens, encumbrances, pledges, interests, and adverse claims, whatsoever, (ii) his Interest represents all of the capital stock or other interests in the Company owed beneficially or of record by such Assignor, (iii) such Assignor has all requisite power and authority to enter into this Redemption Agreement, to perform his obligations hereunder and to consummate the transactions contemplated hereby, and (iv) this Redemption Agreement constitutes a valid and binding agreement of such Assignor, enforceable against him in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

3.     Resignation; Termination of Benefits. Effective as of the date of this Redemption Agreement, each Assignor does hereby resign from any and all positions with or in the Company, whether as employee, officer, stockholder or otherwise. Except to the extent expressly set forth in the Settlement Agreement, (a) neither Assignor shall be entitled to any payment of monies in respect of salary, commissions, bonuses, distributions or other remuneration, and (b) neither Assignor shall be entitled to participate in the benefit plans of the Company, if any, or otherwise be entitled to any perquisite or fringe benefit.

4.     Consent. Each of the parties hereto hereby approves of and consents to the matters necessary to effect the redemption, transfer, assumption and other transactions contemplated in this Redemption Agreement, including, without limitation, to the extent required under the Governing Documents and/or the Massachusetts Business Corporations Act (the "Act"). By execution his/her/their execution below, all of the directors of the Company authorize, approve, ratify and confirm this Agreement and the Company's execution, delivery

and performance hereto. A copy of this Agreement, so executed, shall be inserted into the corporate record books of the Company evidencing said unanimous written consent.

5. **Further Assurances.** Each of the parties from time to time hereafter at the request of any other party and without further consideration shall execute and deliver further instruments of redemption and transfer and take such other actions any other party may reasonably require to more effectively assign and transfer to, and vest in, the Company the Interest and all rights thereto, and to fully implement the provisions of this Redemption Agreement.

6. **Severability.** Should any provision of this Redemption Agreement become or be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.

7. **Entire Agreement.** The Settlement Agreement together with the documents, agreements and instrument set forth therein, including this Redemption Agreement, represents the full agreement among the parties hereto and this Redemption Agreement supersedes any other agreements, oral or written, regarding the subject matter hereof, including, without limitation, the Governing Documents. No provision of this Redemption Agreement may be modified, amended or waived except by written agreement signed by the parties hereto. In signing this Redemption Agreement, neither Assignor nor the Company relies upon any promise, representation of fact or law, or other inducement that is not expressed in this Redemption Agreement or the Settlement Agreement.

8. **Counterparts.** This Redemption Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile and .pdf signatures shall be deemed originals for all purposes hereunder.

9. **Governing Law; Jurisdiction.** The Redemption Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

*{Remainder of page left intentionally blank. Signature page(s) to follow.}*

IN WITNESS WHEREOF, the parties hereto have executed this Redemption Agreement as of the date first written above.

COLEMAN, INC.

By: _____

Name: _____

Title: _____


_____
JORDAN TOBINS, individually


_____
BRENDAN HIGGINS, Jr., individually and
as an Assignor


_____
JOSHUA HUGGARD, individually and as
as an Assignor


The undersigned, constituting all of the members of the board of directors of Coleman, Inc. (the "Company"), do hereby resolve that: (a) the form, terms and provisions of the within Redemption Agreement made and entered into effective as of _____, 2012 by and among the Company, Jordan S. Tobins, Brendan F. Higgins, Jr., and Joshua Huggard is authorized, approved, ratified and confirmed in all respects, (b) that all actions heretofore taken by any of the Company's officers, directors or any of their respective agents in connection with any of the matters described in the preceding resolutions be, and the same hereby are authorized, approved, ratified and confirmed in all respects, and (c) that the appropriate officers of the Company be, and each of them with full authority to act without the others, hereby is, authorized and directed, in the name and on behalf of the Company, to execute and deliver said Redemption Agreement and to take such additional actions and execute such additional documents and instruments as he, she or they in his, her or their judgment, as applicable, shall deem necessary, desirable or appropriate to carry out the intent and effectuate the purposes of the foregoing resolutions.


_____          _____
Name:                             Name:


_____          _____
Name:                             Name:

EXHIBIT A-1 TO REDEMPTION AGREEMENT

(Assignment Separate From Transfer - Higgins)

### ASSIGNMENT SEPARATE FROM TRANSER

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Brendan F. Higgins, Jr. ("Higgins" or "Assignor"), does hereby contribute, sell, assign, transfer, convey and delivery to Coleman, Inc., a Massachusetts limited liability company (the "Company" or "Assignee"), all of Assignor's shares (the "Transferred Shares") of common stock, par value $0.01 per share (the "Common Stock"), of the Company, standing in Assignor's name on the books of the Company, and Assignor does hereby irrevocably constitute and appoint Assignee or its designee attorney-in-fact to transfer the Transferred Shares on the books and records of the Company.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Transferred Shares ("Certificates"). Assignor accordingly believes that Certificates representing the Transferred Shares were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Transferred Shares or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its directors, officers, stockholders and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the _____, 2012.

_____
BRENDAN F. HIGGINS, JR.

B-6

EXHIBIT A-2 TO REDEMPTION AGREEMENT

(Assignment Separate From Transfer - Huggard)

### ASSIGNMENT SEPARATE FROM TRANSER

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Joshua Huggard ("Huggard" or "Assignor"), does hereby contribute, sell, assign, transfer, convey and delivery to Coleman, Inc., a Massachusetts limited liability company (the "Company" or "Assignee"), all of Assignor's shares (the "Transferred Shares") of common stock, par value $0.01 per share (the "Common Stock"), of the Company, standing in Assignor's name on the books of the Company, and Assignor does hereby irrevocably constitute and appoint Assignee or its designee attorney-in-fact to transfer the Transferred Shares on the books and records of the Company.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Transferred Shares ("Certificates"). Assignor accordingly believes that Certificates representing the Transferred Shares were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Transferred Shares or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its directors, officers, stockholders and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the _____, 2012.


_____

JOSHUA HUGGARD

Exhibit C

REDEMPTION AGREEMENT

(CoCoBling, LLC)

This Redemption Agreement (this "Redemption Agreement") is made and entered into effective as of _____, 2012 by and among CoCoBling, LLC, a Massachusetts limited liability company (the "Company"), Jordan S. Tobins ("Tobins"), Brendan F. Higgins, Jr. ("Higgins"), and Joshua Huggard ("Huggard").

    A.    Tobins, Higgins and Huggard are the sole members of the Company, with each one of them currently holding, beneficially and of record, the percentage of outstanding limited liability company membership interests set forth below:

| | |
|---|---|
| Tobins | 33% |
| Higgins | 33% |
| Huggard | 33% |

    B.    The Company, Tobins, Higgins, Huggard and certain other individuals and entities are parties to that certain Settlement Agreement and Mutual Release, dated as of _____, 2012 (the "Settlement Agreement").

    C.    Pursuant to the Settlement Agreement, the parties thereto have agreed, among other things, that the Company will redeem from each of Higgins and Huggard (each of whom is also referred to hereinafter as an "Assignor") 100% of his respective limited liability company membership interest in the Company (an "Interest").

    D.    Reference is made to CoCoBling, LLC Operating Agreement, dated as of January 29, 2007 (the "Operating Agreement"), by and among Tobins, Higgins and Huggard in their respective capacities as members and managers of the Company.

The parties hereto agree as follows:

    1.  Redemption.

    (a)    Subject to the terms and conditions set forth in this Redemption Agreement, and in consideration of the mutual covenants, obligations and agreements set forth in the Settlement Agreement, the receipt and sufficiency of which is hereby acknowledged, each Assignor hereby assigns, transfers and sets over to the Company such Assignor's Interest, including all capital relating thereto and profits and losses derived therefrom, such redemption to be effective as of the date hereof (the "Redemption") by execution and delivery of the Assignment attached hereto as Exhibit A-1 or Exhibit A-2, as applicable.

    (b)    The Company hereby redeems from each Assignor such Assignor's Interest, and hereby relieves each Assignor of any duties, liabilities and obligations to which he is subject under the terms of the Operating Agreement, such relief to be effective as of the date

hereof. In furtherance of the foregoing, the Company agrees to indemnify and hold harmless each Assignor from and against any and all losses, costs, damages, expenses or liabilities arising from or relating to such Assignor's Interest from and after the date hereof.

(c)    After giving effect to the Redemption, Tobins will hold 100% of the outstanding limited liability company membership interests in the Company, and Higgins and Huggard will respectively hold, beneficially and of record, 0% of the outstanding limited liability company membership interests of the Company.

(d)    After giving effect to the Redemption, Tobins and each Assignor agree that the Operating Agreement is hereby amended to reflect the Redemption and the respective percentage interests set forth in Paragraph 1(c) above.

2.    Representations and Warranties.

(a)    The Company has all requisite power and authority to enter into this Redemption Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. This Redemption Agreement constitutes a valid and binding agreement of the Company, enforceable against it in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

(b)    Each Assignor, severally and not jointly, represents and warrants to the Company that (i) he holds good and valid title to the Interest, free and clear of all liens, encumbrances, pledges, interests, and adverse claims, whatsoever, (ii) his Interest represents all of the interests in the Company owed beneficially or of record by such Assignor, (iii) such Assignor has all requisite power and authority to enter into this Redemption Agreement, to perform his obligations hereunder and to consummate the transactions contemplated hereby and (iv) this Redemption Agreement constitutes a valid and binding agreement of such Assignor, enforceable against him in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

3.    Resignation; Termination of Benefits. Effective as of the date of this Redemption Agreement, each Assignor does hereby resign from any and all positions with or in the Company, whether as employee, officer, manager, member or otherwise. Except to the extent expressly set forth in the Settlement Agreement, (a) neither Assignor shall be entitled to any payment of monies in respect of salary, commissions, bonuses, distributions or other remuneration, and (b) neither Assignor shall be entitled to participate in the benefit plans of the Company, if any, or otherwise be entitled to any perquisite or fringe benefit. Effective as of the date of this Redemption Agreement, Tobins will be the sole manager of the Company with such authority as is ascribed to a manager of the Company under the Operating Agreement. After giving effect to the Redemption, Tobins and each Assignor agree that the Operating Agreement is hereby amended to reflect the provisions of this Paragraph 3 and Tobins role as sole Manager (as such term is defined in the Operating Agreement).

4.     Consent.  Each of the parties hereto hereby approves of and consents to the matters necessary to effect the redemption, transfer, assumption and other transactions contemplated in this Redemption Agreement, including, without limitation, to the extent required under the Operating Agreement and/or the Massachusetts Limited Liability Company Act (the "Act").

5.     Further Assurances.  Each of the parties from time to time hereafter at the request of any other party and without further consideration shall execute and deliver further instruments of redemption and transfer and take such other actions any other party may reasonably require to more effectively assign and transfer to, and vest in, the Company the Interest and all rights thereto, and to fully implement the provisions of this Redemption Agreement.

6.     Severability.  Should any provision of this Redemption Agreement become or be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.

7.     Entire Agreement.  The Settlement Agreement together with the documents, agreements and instrument set forth therein, including this Redemption Agreement, represents the full agreement among the parties hereto and this Redemption Agreement supersedes any other agreements, oral or written, regarding the subject matter hereof, including, without limitation, the Operating Agreement.  No provision of this Redemption Agreement may be modified, amended or waived except by written agreement signed by the parties hereto.  In signing this Redemption Agreement, neither Assignor nor the Company relies upon any promise, representation of fact or law, or other inducement that is not expressed in this Redemption Agreement or the Settlement Agreement.

8.     Counterparts.  This Redemption Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Facsimile and .pdf signatures shall be deemed originals for all purposes hereunder.

9.     Governing Law; Jurisdiction.  The Redemption Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

*{Remainder of page left intentionally blank.  Signature page(s) to follow.}*

IN WITNESS WHEREOF, the parties hereto have executed this Redemption Agreement as of the date first written above.

CoCoBling, LLC

By: _____

Name: _____

Title: _____

_____
JORDAN TOBINS, individually and, for purposes of Paragraph 4, as a manager of the Company

_____
BRENDAN HIGGINS, Jr., individually, as an Assignor and, for purposes of _ Paragraph 4, as a manager of the Company prior to the Redemption

_____
JOSHUA HUGGARD, individually, as an Assignor and, for purposes of _ Paragraph 4, as a manager of the Company prior to the Redemption

C-4

EXHIBIT A-1 TO REDEMPTION AGREEMENT

(Assignment and Assumption Agreement - Higgins)

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "<u>Assignment</u>") is made and entered into effective as of _____ __, 2012 by and among CoCoBling, LLC, a Massachusetts limited liability company (the "<u>Company</u>" or "<u>Assignee</u>"), and Brendan F. Higgins, Jr. ("<u>Higgins</u>" or "<u>Assignor</u>").

Effective as of date hereof, Assignor hereby contributes, sells, assigns, transfers, conveys and delivers all of his right, title and interest in and to a 33% limited liability company membership interest (the "<u>Interest</u>") in the Company to Assignee. Assignee hereby accepts the within assignment, transfer, conveyance and delivery and hereby assumes, and shall hereafter pay, perform and discharge any and all of the obligations and liabilities of Assignor with respect to the Interest, whether direct or indirect, absolute or contingent, now due or hereafter arising.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Interest ("<u>Certificates</u>"). Assignor accordingly believes that Certificates representing the Interest were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Interest or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its members, officers, managers and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the date and year first above written.

Assignee:

CoCoBling, LLC

By: _____
Name: _____
Title: _____

Assignor:

_____
BRENDAN F. HIGGINS, JR.

EXHIBIT A-2 TO REDEMPTION AGREEMENT

(Assignment and Assumption Agreement - Huggard)

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment") is made and entered into effective as of _____, 2012 by and among CoCoBling, LLC, a Massachusetts limited liability company (the "Company" or "Assignee"), and Joshua Huggard ("Huggard" or "Assignor").

Effective as of date hereof, Assignor hereby contributes, sells, assigns, transfers, conveys and delivers all of his right, title and interest in and to a 33% limited liability company membership interest (the "Interest") in the Company to Assignee. Assignee hereby accepts the within assignment, transfer, conveyance and delivery and hereby assumes, and shall hereafter pay, perform and discharge any and all of the obligations and liabilities of Assignor with respect to the Interest, whether direct or indirect, absolute or contingent, now due or hereafter arising.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Interest ("Certificates"). Assignor accordingly believes that Certificates representing the Interest were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Interest or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its members, officers, managers and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the date and year first above written.

Assignee:                                    CoCoBling, LLC

                                             By:_____
                                             Name: _____
                                             Title: _____

Assignor:                                    _____
                                             JOSHUA HUGGARD

**Exhibit D**

REDEMPTION AGREEMENT

(Upper Crust, LLC)

This Redemption Agreement (this "Redemption Agreement") is made and entered into effective as of _____, 2012 by and among Upper Crust, LLC, a Massachusetts limited liability company (the "Company"), Jordan S. Tobins ("Tobins"), Brendan F. Higgins, Jr. ("Higgins"), and Joshua Huggard ("Huggard").

A.     Tobins, Higgins and Huggard are the sole members of the Company, with each one of them currently holding, beneficially and of record, the percentage of outstanding limited liability company membership interests set forth below:

| | |
|---|---|
| Tobins | 45% |
| Higgins | 15% |
| Huggard | 40% |

B.     The Company, Tobins, Higgins, Huggard and certain other individuals and entities are parties to that certain Settlement Agreement and Mutual Release, dated as of _____, 2012 (the "Settlement Agreement").

C.     Pursuant to the Settlement Agreement, the parties thereto have agreed, among other things, that the Company will redeem from Tobins (who is also referred to hereinafter as "Assignor") 100% of his limited liability company membership interest in the Company (the "Interest").

D.     Reference is made to The Upper Crust, LLC Operating Agreement, dated as of June 23, 2005 (the "Operating Agreement"), by and among Tobins, Higgins and Huggard in their respective capacities as members of the Company.

The parties hereto agree as follows:

1.   Redemption.

(a)     Subject to the terms and conditions set forth in this Redemption Agreement, and in consideration of the mutual covenants, obligations and agreements set forth in the Settlement Agreement, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby assigns, transfers and sets over to the Company the Interest, including all capital relating thereto and profits and losses derived therefrom, such redemption to be effective as of the date hereof (the "Redemption") by execution and delivery of the Assignment attached hereto as Exhibit A.

(b)     The Company hereby redeems such Interest, and hereby relieves Assignor of any duties, liabilities and obligations to which he is subject under the terms of the Operating Agreement, such relief to be effective as of the date hereof. In furtherance of the foregoing, the

Company agrees to indemnify and hold harmless Assignor from and against any and all losses, costs, damages, expenses or liabilities arising from or relating to the Interest from and after the date hereof. .

(c)     After giving effect to the Redemption, Tobins will hold 0% of the outstanding limited liability company membership interests in the Company, and Higgins and Huggard (who are hereinafter collectively referred to as the "Remaining Members") will respectively hold, beneficially and of record, the percentage of outstanding limited liability company membership interests of the Company set forth below:

| | |
|---|---|
| Higgins | 73% |
| Huggard | 27% |

(d)     After giving effect to the Redemption, Tobins and the Remaining Members agree that the Operating Agreement is hereby amended to reflect the Redemption and the respective percentage interests set forth in Paragraph 1(c) above.

2.     Representations and Warranties.

(a)     The Company has all requisite power and authority to enter into this Redemption Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. This Redemption Agreement constitutes a valid and binding agreement of the Company, enforceable against it in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

(b)     Assignor represents and warrants to the Company that (i) he holds good and valid title to the Interest, free and clear of all liens, encumbrances, pledges, interests, and adverse claims, whatsoever, and (ii) the Interest represents all of the interests in the Company owed beneficially or of record by Assignor. Assignor has all requisite power and authority to enter into this Redemption Agreement, to perform his obligations hereunder and to consummate the transactions contemplated hereby. This Redemption Agreement constitutes a valid and binding agreement of Assignor, enforceable against him in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

3.     Resignation; Termination of Benefits. Effective as of the date of this Redemption Agreement, Assignor does hereby resign from any and all positions with or in the Company, whether as employee, officer, member or otherwise. Except to the extent expressly set forth in the Settlement Agreement, (a) Assignor shall not be entitled to any payment of monies in respect of salary, commissions, bonuses, distributions or other remuneration, and (b) Assignor shall no longer be entitled to participate in the benefit plans of the Company, if any, or otherwise be entitled to any perquisite or fringe benefit.

4.     Consent. Each of the parties hereto hereby approves of and consents to the matters necessary to effect the redemption, transfer, assumption and other transactions

contemplated in this Redemption Agreement, including, without limitation, to the extent required under the Operating Agreement and/or the Massachusetts Limited Liability Company Act (the "Act").

5. _Further Assurances._ Each of the parties from time to time hereafter at the request of any other party and without further consideration shall execute and deliver further instruments of redemption and transfer and take such other actions any other party may reasonably require to more effectively assign and transfer to, and vest in, the Company the Interest and all rights thereto, and to fully implement the provisions of this Redemption Agreement.

6. _Severability._ Should any provision of this Redemption Agreement become or be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.

7. _Entire Agreement._ The Settlement Agreement together with the documents, agreements and instrument set forth therein, including this Redemption Agreement, represents the full agreement among the parties hereto and this Redemption Agreement supersedes any other agreements, oral or written, regarding the subject matter hereof, including, without limitation, the Operating Agreement. No provision of this Redemption Agreement may be modified, amended or waived except by written agreement signed by the parties hereto. In signing this Redemption Agreement, neither Assignor nor the Company relies upon any promise, representation of fact or law, or other inducement that is not expressed in this Redemption Agreement or the Settlement Agreement.

8. _Counterparts._ This Redemption Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile and .pdf signatures shall be deemed originals for all purposes hereunder.

9. _Governing Law; Jurisdiction._ The Redemption Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

_{Remainder of page left intentionally blank. Signature page(s) to follow.}_

IN WITNESS WHEREOF, the parties hereto have executed this Redemption Agreement as of the date first written above.

UPPER CRUST, LLC

By: _____

Name: _____

Title: _____


_____
JORDAN TOBINS, individually and as Assignor


_____
BRENDAN HIGGINS, Jr., individually and as a Remaining Member


_____
JOSHUA HUGGARD, individually and as a Remaining Member

EXHIBIT A TO REDEMPTION AGREEMENT

(Assignment and Assumption Agreement)

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment") is made and entered into effective as of _____, 2012 by and among Upper Crust, LLC, a Massachusetts limited liability company (the "Company" or "Assignee"), and Jordan S. Tobins ("Tobins" or "Assignor").

Effective as of date hereof, Assignor hereby sells, contributes, assigns, transfers, conveys and delivers all of his right, title and interest in and to a 45% limited liability company membership interest (the "Interest") in the Company to Assignee. Assignee hereby accepts the within assignment, transfer, conveyance and delivery and hereby assumes, and shall hereafter pay, perform and discharge any and all of the obligations and liabilities of Assignor with respect to the Interest, whether direct or indirect, absolute or contingent, now due or hereafter arising.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Interest ("Certificates"). Assignor accordingly believes that Certificates representing the Interest were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Interest or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its members, officers, managers and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the date and year first above written.

Assignee:                                      UPPER CRUST, LLC

By:_____
Name: _____
Title: _____

Assignor:                                      _____
                                               JORDAN TOBINS

D-6

Exhibit E

REDEMPTION AGREEMENT

(JJB Hanson Management, Inc.)

This Redemption Agreement (this "Redemption Agreement") is made and entered into effective as of _____, 2012 by and among JJB Hanson Management, Inc., a Massachusetts corporation (the "Company"), Jordan S. Tobins ("Tobins"), Brendan F. Higgins, Jr. ("Higgins"), and Joshua Huggard ("Huggard").

A.    Tobins, Higgins and Huggard are the sole stockholders of the Company, with each one of them currently holding, beneficially and of record, the percentage of outstanding common stock, no par value per share ("Common Stock"):

| | |
|---|---|
| Tobins | 33% |
| Higgins | 33% |
| Huggard | 33% |

B.    The Company, Tobins, Higgins, Huggard and certain other individuals and entities are parties to that certain Settlement Agreement and Mutual Release, dated as of _____, 2012 (the "Settlement Agreement").

C.    Pursuant to the Settlement Agreement, the parties thereto have agreed, among other things, that the Company will redeem from Tobins (who is also referred to hereinafter as "Assignor") 100% of his respective shares of Common Stock in the Company (the "Interest").

D.    Reference is made to the Articles of Organization and By-Laws of the Company, each as in effect as of the date hereof (collectively, the "Governing Documents").

The parties hereto agree as follows:

1.  Redemption.

(a)    Subject to the terms and conditions set forth in this Redemption Agreement, and in consideration of the mutual covenants, obligations and agreements set forth in the Settlement Agreement, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby assigns, transfers and sets over to the Company the Interest, such redemption to be effective as of the date hereof (collectively, the "Redemption") by execution and delivery of the Assignment attached hereto as Exhibit A.

(b)    The Company hereby redeems from Assignor the Interest, and hereby relieves Assignor of any duties, liabilities and obligations to which he is subject under the terms of the Governing Documents, if any, such relief to be effective as of the date hereof. In furtherance of the foregoing, the Company agrees to indemnify and hold harmless Assignor from and against any and all losses, costs, damages, expenses or liabilities arising from or relating to the Interest from and after the date hereof.

E-1

(c)      After giving effect to the Redemption, Tobins will hold 0% of the outstanding capital stock the Company, and Higgins and Huggard (who are hereinafter collectively referred to as the "Remaining Stockholders") will respectively hold, beneficially and of record, the percentage of outstanding Common Stock set forth below:

| | |
|---|---|
| Higgins | 50% |
| Huggard | 50% |

(d)      After giving effect to the Redemption, the parties hereto agree that the Company's stock ledger and other books and records will be updated and amended to reflect the Redemption and the respective percentage interests set forth in Paragraph 1(c) above.

2.      Representations and Warranties.

(a)      The Company has all requisite power and authority to enter into this Redemption Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. This Redemption Agreement constitutes a valid and binding agreement of the Company, enforceable against it in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity.

(b)      Assignor represents and warrants to the Company that (i) he holds good and valid title to the Interest, free and clear of all liens, encumbrances, pledges, interests, and adverse claims, whatsoever, and (ii) the Interest represents all of the capital stock or other interests in the Company owed beneficially or of record by Assignor. Assignor has all requisite power and authority to enter into this Redemption Agreement, to perform his obligations hereunder and to consummate the transactions contemplated hereby. This Redemption Agreement constitutes a valid and binding agreement of Assignor, enforceable against him in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other laws affecting enforcement of creditors' rights generally and by general principles of equity

3.      Resignation; Termination of Benefits.  Effective as of the date of this Redemption Agreement, Assignor does hereby resign from any and all positions with or in the Company, whether as employee, officer, stockholder or otherwise. Except to the extent expressly set forth in the Settlement Agreement, (a) Assignor shall not be entitled to any payment of monies in respect of salary, commissions, bonuses, distributions or other remuneration, and (b) Assignor shall no longer be entitled to participate in the benefit plans of the Company, if any, or otherwise be entitled to any perquisite or fringe benefit.

4.      Consent.  Each of the parties hereto hereby approves of and consents to the matters necessary to effect the redemption, transfer, assumption and other transactions contemplated in this Redemption Agreement, including, without limitation, to the extent required under the Governing Documents and/or the Massachusetts Business Corporations Act (the "Act"). By execution his/her/their execution below, all of the directors of the Company

authorize, approve, ratify and confirm this Agreement and the Company's execution, delivery and performance hereto. A copy of this Agreement, so executed, shall be inserted into the corporate record books of the Company evidencing said unanimous written consent.

5.   Further Assurances. Each of the parties from time to time hereafter at the request of any other party and without further consideration shall execute and deliver further instruments of redemption and transfer and take such other actions any other party may reasonably require to more effectively assign and transfer to, and vest in, the Company the Interest and all rights thereto, and to fully implement the provisions of this Redemption Agreement.

6.   Severability. Should any provision of this Redemption Agreement become or be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby.

7.   Entire Agreement. The Settlement Agreement together with the documents, agreements and instrument set forth therein, including this Redemption Agreement, represents the full agreement among the parties hereto and this Redemption Agreement supersedes any other agreements, oral or written, regarding the subject matter hereof, including, without limitation, the Governing Documents. No provision of this Redemption Agreement may be modified, amended or waived except by written agreement signed by the parties hereto. In signing this Redemption Agreement, neither Assignor nor the Company relies upon any promise, representation of fact or law, or other inducement that is not expressed in this Redemption Agreement or the Settlement Agreement.

8.   Counterparts. This Redemption Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile and .pdf signatures shall be deemed originals for all purposes hereunder.

9.   Governing Law; Jurisdiction. The Redemption Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

*{Remainder of page left intentionally blank. Signature page(s) to follow.}*

E-3

IN WITNESS WHEREOF, the parties hereto have executed this Redemption Agreement as of the date first written above.

JJB HANSON MANAGEMENT, INC.

By: _____

Name: _____

Title: _____


_____
JORDAN TOBINS, individually and as
Assignor


_____
BRENDAN HIGGINS, Jr., individually and
as a Remaining Stockholder


_____
JOSHUA HUGGARD, individually and as
a Remaining Stockholder

The undersigned, constituting all of the members of the board of directors of JJB Hanson Management, Inc. (the "Company"), do hereby resolve that: (a) the form, terms and provisions of the within Redemption Agreement made and entered into effective as of _____ __, 2012 by and among the Company, Jordan S. Tobins, Brendan F. Higgins, Jr., and Joshua Huggard is authorized, approved, ratified and confirmed in all respects, (b) that all actions heretofore taken by any of the Company's officers, directors or any of their respective agents in connection with any of the matters described in the preceding resolutions be, and the same hereby are authorized, approved, ratified and confirmed in all respects, and (c) that the appropriate officers of the Company be, and each of them with full authority to act without the others, hereby is, authorized and directed, in the name and on behalf of the Company, to execute and deliver said Redemption Agreement and to take such additional actions and execute such additional documents and instruments as he, she or they in his, her or their judgment, as applicable, shall deem necessary, desirable or appropriate to carry out the intent and effectuate the purposes of the foregoing resolutions.


_____          _____
Name: _____                          Name: _____


_____          _____
Name: _____                          Name: _____


E-4

EXHIBIT A TO REDEMPTION AGREEMENT

(Assignment Separate From Transfer)

## ASSIGNMENT SEPARATE FROM TRANSER

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Jordan ("Tobins" or "Assignor"), does hereby contribute, sell, assign, transfer, convey and delivery to JJB Hanson Management, Inc., a Massachusetts limited liability company (the "Company" or "Assignee"), all of Assignor's shares (the "Transferred Shares") of common stock, no par value per share (the "Common Stock"), of the Company, standing in Assignor's name on the books of the Company, and Assignor does hereby 'irrevocably constitute and appoint Assignee or its designee attorney-in-fact to transfer the Transferred Shares on the books and records of the Company.

Assignor has made a diligent search of all of Assignor's records and places of safekeeping of important documents or valuable property and has been unable to find any of certificates representing the Transferred Shares ("Certificates"). Assignor accordingly believes that Certificates representing the Transferred Shares were never issued or have been inadvertently lost, stolen or destroyed. Assignor further states that no Certificate was endorsed, pledged, sold, delivered, transferred, assigned, deposited under any agreement, hypothecated or otherwise disposed of. Assignor further states that no person, firm, corporation or government agency, other than the Company, has asserted any right, title, claim, equity or interest in or to any Certificate or the Transferred Shares or any part therein. Assignor hereby agrees that, in the event of the recovery of any Certificate (or in the case of a mutilated Certificate, any additional remains of the same), at any time, Assignor will cause the same to be immediately returned to the Company for cancellation, without consideration or cost. Assignor hereby agrees to indemnify and hold the Company, its directors, officers, stockholders and employees harmless from any loss, cost, expense, liability, action, claim, judgment or demand arising from the loss of any Certificate.

At any time and from time to time, each of Assignor and Assignee hereby agrees, without further consideration to take such actions and to execute and deliver such further instruments and documents as may be necessary to effectuate the purposes of this Assignment. This Assignment may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument. This Assignment is to be construed pursuant to the substantive laws of the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the _____, 2012.

_____
JORDAN TOBINS

E-6

<u>Exhibit F</u>

<u>PLEDGE AGREEMENT</u>

This PLEDGE AGREEMENT (this "<u>Agreement</u>"), is made this ___ day of _____ 2012, by and between Joshua Huggard ("<u>Pledgor</u>") and Jordan Tobins (collectively, "<u>Pledgee</u>").

A.    Pledgor, Pledgee and certain other individuals and entities are parties to that certain Settlement Agreement and Mutual Release, dated as of _____ __, 2012 (the "<u>Settlement Agreement</u>"), pursuant to which, among other things, the parties thereto have settled certain disputes and claims among them.

B.    As of the date hereof, Pledgor holds shares of capital stock or limited liability company membership interests in JJB Hanson Management, Inc. and Upper Crust, LLC (such capital stock or limited liability company membership interests, collectively, the "<u>Initial Interest</u>" and such entity, a "<u>Company</u>").

C.    To secure Pledgor's payment and performance of his obligations under the Settlement Agreement (as provided therein), Pledgor hereby agrees to pledge to Pledgee (a) the Initial Interest, (b) any additional capital stock or limited liability company membership interest or option, warrant or right to acquire capital stock or a limited liability company membership interest in any Company that Pledgor may in the future acquire ("<u>Future Interest</u>"), and (c) any distribution or exchange of equity interest in connection with any reorganization, recapitalization, reclassification or increase or reduction of capital, if any, to which Pledgor shall become entitled for any reason whatsoever as an addition to, in substitution for, or in exchange for any portion of the Initial Interest or Future Interest (clauses (a), (b) and (c), collectively, the "Interest").

NOW THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged by Pledgor, the parties hereto, intending to be legally bound hereby covenant and agree as follows:

1.    <u>Pledge</u>. As collateral security for the prompt and complete payment and performance when due of all of the Obligations, Pledgor pledges, assigns, sets over, grants a first priority lien on and a security interest in, and delivers to Pledgee all of Pledgor's right, title and interest in and to the Interest. As used herein, "Obligations" means, collectively, (a) the full and prompt payment and performance in full of all obligations due and owing to Pledgee from Pledgor under the Settlement Agreement, and (b) all out of pocket expenses (including reasonable attorneys' fees and disbursements) which are incurred by Pledgee in enforcing any rights with respect to, or in the enforcement or collection of, any or all of the foregoing obligations of Pledgor, or which are incurred by Pledgee enforcing or collecting upon this Agreement. In order to perfect Pledgee's security interest in the Interest, upon Pledgee's request thereof, Pledgor shall deliver to Pledgee stock certificate(s) and/or certificate(s) representing limited liability company membership interests representing the Interest.

2.    <u>Representations and Warranties</u>. Pledgor warrants and represents to Pledgee, that: (a) Pledgor is the lawful owner of the Interest, free and clear of all pledges, hypothecations,

charges, security interests, liens and encumbrances or other interests of third parties; and (b) Pledgor has the full power and lawful right to pledge the Interest to Pledgee.

     3.    <u>Rights with Respect to Interest in Absence of Default</u>. Prior to the occurrence of any default or Event of Default under this Agreement or any default by Pledgor of his Obligations, Pledgor shall have all rights, powers, privileges and preferences pertaining to the Interest. The exercise by Pledgee of any of its rights hereunder shall not release Pledgor from its Obligations.

     4.    <u>Security Interest</u>. Pledgor agrees that Pledgee shall have, and there is hereby granted to and created in favor of Pledgee a security interest in and to the Interest. The security interest granted to Pledgee in this Agreement shall be a first priority interest in the Interest, prior and superior to the rights of all third parties in the Interest existing on the date of this Agreement or arising in the future. Pledgor shall faithfully preserve and protect Pledgee's, security interest for the benefit of Pledgee in the Interest and will do all such acts and things and execute and deliver all such documents and instruments as Pledgee may reasonably request from time to time in order to preserve and protect such security interest.

     5.    <u>Preservation of Interest</u>. Pledgor assumes full responsibility for taking any and all necessary steps to preserve rights with respect to the Interest against any third parties. Pledgor covenants that it will defend the collateral against the claims and demands of all other parties, to keep the collateral free from all liens and encumbrances, and not to sell, transfer, assign, deliver, pledge, hypothecate or otherwise dispose of the Interest or any part therein.

     6.    <u>Events of Default</u>. The occurrence of any of the following shall constitute an event of default ("<u>Event of Default</u>") hereunder:

     (a)    <u>Default by Pledgor</u>. The default or the failure of Pledgor to perform any of the Obligations; provided, that, in the event of a good-faith dispute between Pledgor and Pledgee as to whether Pledgor has complied with its Obligations then there shall be no default under this Agreement until Pledgee exercised commercially reasonable efforts to resolve such dispute; provided, that the foregoing shall not be deemed to require the commencement of litigation. In the event of a default by Pledgor of any of the Obligations, Pledgee shall provide written notice of such default to Pledgor, and Pledgor shall have thirty (30) days from such notice to cure such default.

     (b)    <u>Liens on Interest</u>. The initiation of steps by any third party to obtain a lien, levy or writ of attachment or garnishment upon the Interest or to affect the Interest by other legal process, unless the same is dismissed within thirty (30) days after the initiation thereof.

     (c)    <u>Certain Transfers</u>. The transfer of the Interest by Pledgor under circumstances which would entitle a trustee in bankruptcy or similar fiduciary to avoid such transfer under the federal bankruptcy laws, as amended, or under any other laws, whether federal or state, for the relief of debtors or avoidance of transfers and/or conveyances, now or hereafter existing, or the direct or indirect assignment, sale, exchange or transfer of the Interest, in whole or in part, without the prior written consent of Pledgee.

(d)     Default in Performance. The failure of Pledgor to perform this Agreement, or any breach of any representation, warrant, covenant or agreement contained in this Agreement and the continuation of such failure for at least thirty (30) days following Pledgee's written notice thereof to Pledgor.

(e)     Pledgor's Bankruptcy.   The entry of a decree or order by a court of competent jurisdiction adjudging Pledgor bankrupt or insolvent, or approving a petition seeking reorganization, arrangement, adjustment or composition of or in respect of Pledgor, under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, and the continuance of any such decree or order unstayed and in effect for a period of 60 days; or the commencement by Pledgor of a voluntary case under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or similar law, or the consent by Pledgor to the institution of bankruptcy or insolvency proceedings against him, or the filing by Pledgor of a petition or answer or consent seeking reorganization or relief under federal bankruptcy law or any other applicable federal or state law, or the consent by Pledgor to the filing of such petition or to the appointment of a receiver, liquidator, assignee, trustee, sequestrator or similar official of Pledgor or of any substantial part of the property of Pledgor, or the making by Pledgor of an assignment for the benefit of creditors, or the admission by Pledgor in writing of his inability to pay his debts generally as they become due, or the taking of corporate action by Pledgor in furtherance of any such action.

7.     Remedies upon Default.  If an Event of Default under this Agreement shall occur and be continuing prior to the termination of this Agreement (as provided herein), Pledgee shall have such rights and remedies with respect to the Interest or any part of the Interest as are provided by the Uniform Commercial Code as enacted in the Commonwealth of Virginia, and such other rights and remedies with respect to the Interest that Pledgee may have at law or in equity or under this Agreement.   Upon any such default Pledgee shall have the right to (a) transfer to Pledgee's, name or into the name of its nominee or nominees, all or any portion of the Interest and thereafter receive, for the benefit of Pledgee all monies paid on the Interest, give all consents, waivers and ratifications in respect thereof, exercise all such rights, powers, privileges and preferences pertaining to the Interest, and otherwise act with respect to the Interest as though it was the outright owner of the Interest, or (b) after ten (10) days' notice of its intention to do so, sell all or any portion of the Interest at such place or places and at such time or times and in such manner as Pledgee may determine in an arms-length transaction or effected in any other commercially reasonable manner, at such prices and on such terms as Pledgee may deem best. To effectuate the provisions of this Agreement, Pledgor hereby irrevocably appoints and constitutes Pledgee as Pledgor's true and lawful attorney with full power of substitution upon and during the continuation of an Event of Default to complete and fill in any blank endorsements and resignations, to file the same and to take such further action as Pledgee may deem necessary to exercise all of its right, title and position in the Interest, whether or not such resignation or transfer is effected.  The power of attorney appointment made in this paragraph shall be deemed irrevocable and coupled with an interest.  Pledgee may enforce its rights and remedies under this Agreement without first proceeding against Pledgor.  Pledgor hereby waives (a) notice or judicial hearing in connection with Pledgee taking possession or disposition of the Interest, (b) damages occasioned by Pledgee taking possession of the Interest, (c) requirements

F-3

as to the time, place and terms of the sale, and (d) rights of appraisal, valuation, stay or execution.

8.   Termination; Successors and Assigns.  Subject to Section 12(c) below, upon full performance of the Obligations, this Agreement shall terminate and be of no further force and effect. Until such time, this Agreement shall bind Pledgor, its successors and assigns, and shall inure to the benefit of Pledgee and its successors and assigns. Pledgor further agrees to execute such other instruments and documents as Pledgee may deem necessary or desirable to effectuate the purposes of this Agreement. If Pledgor has delivered to Pledgee any certificate representing the Interest, upon termination of this Agreement, Pledgee shall return said certificate(s) to Pledgor.

9.   Notices.  All notices and other communications here under shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested and postage prepaid, or by overnight courier and shall be addressed to the addresses set forth on the signature page hereto, or at such other address as may be supplied by written notice given in conformity with this Paragraph 9. Notice delivered personally shall be deemed to be effective upon receipt; notice sent by certified or registered mail shall be deemed effective three business days after the certificate or registration thereof; and notice sent by overnight courier shall be deemed effective on the next business day after delivery to the courier.

10.   Governing Law.  This Agreement has been executed and delivered and shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

11.   Severability.  The provisions of this Agreement are intended to be severable. If any provision of this Agreement shall for any reason be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or any other provision of this Agreement in any jurisdiction.

12.   Miscellaneous.

(a)   Expenses.  Pledgor agrees to reimburse Pledgee for any expenses incurred in connection with its enforcement of this Agreement.

(b)   Indemnity Obligation.  Pledgor does hereby covenant to indemnify and hold Pledgee harmless, from and against any and all claims, demands, losses, liabilities, costs and expenses of every kind and nature, arising from or relating to this Agreement or the Obligations.

(c)   Reinstatement.  If any claim is ever made on Pledgee for repayment or recovery of any amount or amounts received by Pledgee in payment, or on account of any of the Obligations and Pledgee repays all or part of such amount(s), or performance is otherwise rescinded, Pledgor will be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Pledgee notwithstanding any termination hereof or any cancellation of any instrument evidencing the Obligations.

(d)    <u>Entire Agreement; Amendment</u>.   This Agreement, together with the documents and instruments referred to herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof.   The terms and provisions of this Agreement may be modified or amended only by written agreement executed by all parties hereto.

{Remainder of page left intentionally blank.  Signature page follows.}

F-5

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Agreement as of the day first written above.  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, but all such counterparts together shall constitute one and the same agreement.  Facsimile and pdf. signatures will be deemed originals for all purposes.

PLEDGOR:

JOSHUA HUGGARD

Address for Notice Purposes:

c/o Franklin Levy, Esq.

Lawson & Weitzen, LLP

88 Black Falcon Avenue

Boston, MA  02210

PLEDGEE:

JORDAN TOBINS

Address for Notice Purposes:

c/o Scott C. Ford, Esq.

Mintz Levin

One Financial Center

Boston, MA 02111

<u>Exhibit G</u>

PLEDGE AGREEMENT

This PLEDGE AGREEMENT (this "<u>Agreement</u>"), is made this ___ day of _____,
2012, by and between Brendan Higgins, Jr. ("<u>Pledgor</u>") and Jordan Tobins (collectively,
"<u>Pledgee</u>").

A.    Pledgor, Pledgee and certain other individuals and entities are parties to that
certain Settlement Agreement and Mutual Release, dated as of _____, __, 2012 (the
"<u>Settlement Agreement</u>"), pursuant to which, among other things, the parties thereto have settled
certain disputes and claims among them.

B.    As of the date hereof, Pledgor holds shares of capital stock or limited liability
company membership interests in JJB Hanson Management, Inc. and Upper Crust, LLC (such
capital stock or limited liability company membership interests, collectively, the "<u>Initial Interest</u>"
and such entity, a "<u>Company</u>").

C.    To secure Pledgor's payment and performance of his obligations under the
Settlement Agreement (as provided therein), Pledgor hereby agrees to pledge to Pledgee (a) the
Initial Interest, (b) any additional capital stock or limited liability company membership interest
or option, warrant or right to acquire capital stock or a limited liability company membership
interest in any Company that Pledgor may in the future acquire ("<u>Future Interest</u>"), and (c) any
distribution or exchange of equity interest in connection with any reorganization,
recapitalization, reclassification or increase or reduction of capital, if any, to which Pledgor shall
become entitled for any reason whatsoever as an addition to, in substitution for, or in exchange
for any portion of the Initial Interest or Future Interest (clauses (a), (b) and (c), collectively, the
"<u>Interest</u>").

NOW THEREFORE, for good and valuable consideration, the sufficiency and receipt of
which are hereby acknowledged by Pledgor, the parties hereto, intending to be legally bound
hereby covenant and agree as follows:

13.    <u>Pledge.</u>  As collateral security for the prompt and complete payment and
performance when due of all of the Obligations, Pledgor pledges, assigns, sets over, grants a first
priority lien on and a security interest in, and delivers to Pledgee all of Pledgor's right, title and
interest in and to the Interest. As used herein, "Obligations" means, collectively, (a) the full and
prompt payment and performance in full of all obligations due and owing to Pledgee from
Pledgor under the Settlement Agreement, and (b) all out of pocket expenses (including
reasonable attorneys' fees and disbursements) which are incurred by Pledgee in enforcing any
rights with respect to, or in the enforcement or collection of, any or all of the foregoing
obligations of Pledgor, or which are incurred by Pledgee enforcing or collecting upon this
Agreement. In order to perfect Pledgee's security interest in the Interest, upon Pledgee's request
thereof, Pledgor shall deliver to Pledgee stock certificate(s) and/or certificate(s) representing
limited liability company membership interests representing the Interest.

14.    <u>Representations and Warranties.</u>  Pledgor warrants and represents to Pledgee, that:
(a) Pledgor is the lawful owner of the Interest, free and clear of all pledges, hypothecations,

charges, security interests, liens and encumbrances or other interests of third parties; and (b) Pledgor has the full power and lawful right to pledge the Interest to Pledgee.

15.     Rights with Respect to Interest in Absence of Default.  Prior to the occurrence of any default or Event of Default under this Agreement or any default by Pledgor of his Obligations, Pledgor shall have all rights, powers, privileges and preferences pertaining to the Interest.  The exercise by Pledgee of any of its rights hereunder shall not release Pledgor from its Obligations.

16.     Security Interest.  Pledgor agrees that Pledgee shall have, and there is hereby granted to and created in favor of Pledgee a security interest in and to the Interest.  The security interest granted to Pledgee in this Agreement shall be a first priority interest in the Interest, prior and superior to the rights of all third parties in the Interest existing on the date of this Agreement or arising in the future.  Pledgor shall faithfully preserve and protect Pledgee's security interest for the benefit of Pledgee in the Interest and will do all such acts and things and execute and deliver all such documents and instruments as Pledgee may reasonably request from time to time in order to preserve and protect such security interest.

17.     Preservation of Interest.  Pledgor assumes full responsibility for taking any and all necessary steps to preserve rights with respect to the Interest against any third parties.  Pledgor covenants that it will defend the collateral against the claims and demands of all other parties, to keep the collateral free from all liens and encumbrances, and not to sell, transfer, assign, deliver, pledge, hypothecate or otherwise dispose of the Interest or any part therein.

18.     Events of Default.  The occurrence of any of the following shall constitute an event of default ("Event of Default") hereunder:

(a)     Default by Pledgor.  The default or the failure of Pledgor to perform any of the Obligations; provided, that, in the event of a good-faith dispute between Pledgor and Pledgee as to whether Pledgor has complied with its Obligations then there shall be no default under this Agreement until Pledgee exercised commercially reasonable efforts to resolve such dispute; provided, that the foregoing shall not be deemed to require the commencement of litigation.  In the event of a default by Pledgor of any of the Obligations, Pledgee shall provide written notice of such default to Pledgor, and Pledgor shall have thirty (30) days from such notice to cure such default.

(b)     Liens on Interest.  The initiation of steps by any third party to obtain a lien, levy or writ of attachment or garnishment upon the Interest or to affect the Interest by other legal process, unless the same is dismissed within thirty (30) days after the initiation thereof.

(c)     Certain Transfers.  The transfer of the Interest by Pledgor under circumstances which would entitle a trustee in bankruptcy or similar fiduciary to avoid such transfer under the federal bankruptcy laws, as amended, or under any other laws, whether federal or state, for the relief of debtors or avoidance of transfers and/or conveyances, now or hereafter existing, or the direct or indirect assignment, sale, exchange or transfer of the Interest, in whole or in part, without the prior written consent of Pledgee.

(d) <u>Default in Performance</u>. The failure of Pledgor to perform this Agreement, or any breach of any representation, warrant, covenant or agreement contained in this Agreement and the continuation of such failure for at least thirty (30) days following Pledgee's written notice thereof to Pledgor.

(e) <u>Pledgor's Bankruptcy</u>. The entry of a decree or order by a court of competent jurisdiction adjudging Pledgor bankrupt or insolvent, or approving a petition seeking reorganization, arrangement, adjustment or composition of or in respect of Pledgor, under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, and the continuance of any such decree or order unstayed and in effect for a period of 60 days; or the commencement by Pledgor of a voluntary case under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or similar law, or the consent by Pledgor to the institution of bankruptcy or insolvency proceedings against him, or the filing by Pledgor of a petition or answer or consent seeking reorganization or relief under federal bankruptcy law or any other applicable federal or state law, or the consent by Pledgor to the filing of such petition or to the appointment of a receiver, liquidator, assignee, trustee, sequestrator or similar official of Pledgor or of any substantial part of the property of Pledgor, or the making by Pledgor of an assignment for the benefit of creditors, or the admission by Pledgor in writing of his inability to pay his debts generally as they become due, or the taking of corporate action by Pledgor in furtherance of any such action.

19. <u>Remedies upon Default</u>. If an Event of Default under this Agreement shall occur and be continuing prior to the termination of this Agreement (as provided herein), Pledgee shall have such rights and remedies with respect to the Interest or any part of the Interest as are provided by the Uniform Commercial Code as enacted in the Commonwealth of Virginia, and such other rights and remedies with respect to the Interest that Pledgee may have at law or in equity or under this Agreement. Upon any such default Pledgee shall have the right to (a) transfer to Pledgee's, name or into the name of its nominee or nominees, all or any portion of the Interest and thereafter receive, for the benefit of Pledgee all monies paid on the Interest, give all consents, waivers and ratifications in respect thereof, exercise all such rights, powers, privileges and preferences pertaining to the Interest, and otherwise act with respect to the Interest as though it was the outright owner of the Interest, or (b) after ten (10) days' notice of its intention to do so, sell all or any portion of the Interest at such place or places and at such time or times and in such manner as Pledgee may determine in an arms-length transaction or effected in any other commercially reasonable manner, at such prices and on such terms as Pledgee may deem best. To effectuate the provisions of this Agreement, Pledgor hereby irrevocably appoints and constitutes Pledgee as Pledgor's true and lawful attorney with full power of substitution upon and during the continuation of an Event of Default to complete and fill in any blank endorsements and resignations, to file the same and to take such further action as Pledgee may deem necessary to exercise all of its right, title and position in the Interest, whether or not such resignation or transfer is effected. The power of attorney appointment made in this paragraph shall be deemed irrevocable and coupled with an interest. Pledgee may enforce its rights and remedies under this Agreement without first proceeding against Pledgor. Pledgor hereby waives (a) notice or judicial hearing in connection with Pledgee taking possession or disposition of the Interest, (b) damages occasioned by Pledgee taking possession of the Interest, (c) requirements

G-3

as to the time, place and terms of the sale, and (d) rights of appraisal, valuation, stay or execution.

20.    Termination: Successors and Assigns.  Subject to Section 12(c) below, upon full performance of the Obligations, this Agreement shall terminate and be of no further force and effect. Until such time, this Agreement shall bind Pledgor, its successors and assigns, and shall inure to the benefit of Pledgee and its successors and assigns.  Pledgor further agrees to execute such other instruments and documents as Pledgee may deem necessary or desirable to effectuate the purposes of this Agreement.  If Pledgor has delivered to Pledgee any certificate representing the Interest, upon termination of this Agreement, Pledgee shall return said certificate(s) to Pledgor.

21.    Notices.  All notices and other communications here under shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested and postage prepaid, or by overnight courier and shall be addressed to the addresses set forth on the signature page hereto, or at such other address as may be supplied by written notice given in conformity with this Paragraph 9.  Notice delivered personally shall be deemed to be effective upon receipt; notice sent by certified or registered mail shall be deemed effective three business days after the certificate or registration thereof; and notice sent by overnight courier shall be deemed effective on the next business day after delivery to the courier.

22.    Governing Law.  This Agreement has been executed and delivered and shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

23.    Severability.  The provisions of this Agreement are intended to be severable.  If any provision of this Agreement shall for any reason be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or any other provision of this Agreement in any jurisdiction.

24.    Miscellaneous.

    (a)    Expenses.  Pledgor agrees to reimburse Pledgee for any expenses incurred in connection with its enforcement of this Agreement.

    (b)    Indemnity Obligation.  Pledgor does hereby covenant to indemnify and hold Pledgee harmless, from and against any and all claims, demands, losses, liabilities, costs and expenses of every kind and nature, arising from or relating to this Agreement or the Obligations.

    (c)    Reinstatement.  If any claim is ever made on Pledgee for repayment or recovery of any amount or amounts received by Pledgee in payment, or on account of any of the Obligations and Pledgee repays all or part of such amount(s), or performance is otherwise rescinded, Pledgor will be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Pledgee notwithstanding any termination hereof or any cancellation of any instrument evidencing the Obligations.

(d)    <u>Entire Agreement; Amendment</u>.   This Agreement, together with the documents and instruments referred to herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof. The terms and provisions of this Agreement may be modified or amended only by written agreement executed by all parties hereto.

{Remainder of page left intentionally blank. Signature page follows.}

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Agreement as of the day first written above.  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, but all such counterparts together shall constitute one and the same agreement.  Facsimile and pdf. signatures will be deemed originals for all purposes.

PLEDGOR:

BRENDAN HIGGINS, JR.

Address for Notice Purposes:

c/o Franklin Levy, Esq.

Lawson & Weitzen, LLP

88 Black Falcon Avenue

Boston, MA  02210

PLEDGEE:

JORDAN TOBINS

Address for Notice Purposes:

c/o Scott C. Ford, Esq.

Mintz Levin

One Financial Center

Boston, MA 02111

**Exhibit H**

## PLEDGE AGREEMENT

This PLEDGE AGREEMENT (this "Agreement"), is made this ___ day of _____ 2012, by and between Jordan Tobins, on the one hand ("Pledgor"), and Joshua Huggard and Brendan Higgins, Jr., acting jointly, on the other hand (collectively, "Pledgee").

A.    Pledgor, Pledgee and certain other individuals and entities are parties to that certain Settlement Agreement and Mutual Release, dated as of _____ __, 2012 (the "Settlement Agreement"), pursuant to which, among other things, the parties thereto have settled certain disputes and claims among them.

B.    As of the date hereof, Pledgor holds 100% of the capital stock or limited liability company membership interests in Coletrain, Inc., Coleman, Inc. and CoCoBling, LLC (such capital stock or limited liability company membership interests, collectively, the "Initial Interest" and such entity, a "Company").

C.    To secure Pledgor's payment and performance of his obligations under the Settlement Agreement (as provided therein), Pledgor hereby agrees to pledge to Pledgee (a) the Initial Interest, (b) any additional capital stock or limited liability company membership interest or option, warrant or right to acquire capital stock or a limited liability company membership interest in any Company that Pledgor may in the future acquire ("Future Interest"), and (c) any distribution or exchange of equity interest in connection with any reorganization, recapitalization, reclassification or increase or reduction of capital, if any, to which Pledgor shall become entitled for any reason whatsoever as an addition to, in substitution for, or in exchange for any portion of the Initial Interest or Future Interest (clauses (a), (b) and (c), collectively, the "Interest").

NOW THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged by Pledgor, the parties hereto, intending to be legally bound hereby covenant and agree as follows:

25.    Pledge. As collateral security for the prompt and complete payment and performance when due of all of the Obligations, Pledgor pledges, assigns, sets over, grants a first priority lien on and a security interest in, and delivers to Pledgee all of Pledgor's right, title and interest in and to the Interest. As used herein, "Obligations" means, collectively, (a) the full and prompt payment and performance in full of all obligations due and owing to Pledgee from Pledgor under the Settlement Agreement, and (b) all out of pocket expenses (including reasonable attorneys' fees and disbursements) which are incurred by Pledgee in enforcing any rights with respect to, or in the enforcement or collection of, any or all of the foregoing obligations of Pledgor, or which are incurred by Pledgee enforcing or collecting upon this Agreement. In order to perfect Pledgee's security interest in the Interest, upon Pledgee's request thereof, Pledgor shall deliver to Pledgee stock certificate(s) and/or certificate(s) representing limited liability company membership interests representing the Interest.

26.    Representations and Warranties. Pledgor warrants and represents to Pledgee, that: (a) Pledgor is the lawful owner of the Interest, free and clear of all pledges, hypothecations,

charges, security interests, liens and encumbrances or other interests of third parties; and (b) Pledgor has the full power and lawful right to pledge the Interest to Pledgee.

27.    Rights with Respect to Interest in Absence of Default. Prior to the occurrence of any default or Event of Default under this Agreement or any default by Pledgor of his Obligations, Pledgor shall have all rights, powers, privileges and preferences pertaining to the Interest. The exercise by Pledgee of any of its rights hereunder shall not release Pledgor from its Obligations.

28.    Security Interest. Pledgor agrees that Pledgee shall have, and there is hereby granted to and created in favor of Pledgee a security interest in and to the Interest. The security interest granted to Pledgee in this Agreement shall be a first priority interest in the Interest, prior and superior to the rights of all third parties in the Interest existing on the date of this Agreement or arising in the future. Pledgor shall faithfully preserve and protect Pledgee's, security interest for the benefit of Pledgee in the Interest and will do all such acts and things and execute and deliver all such documents and instruments as Pledgee may reasonably request from time to time in order to preserve and protect such security interest.

29.    Preservation of Interest. Pledgor assumes full responsibility for taking any and all necessary steps to preserve rights with respect to the Interest against any third parties. Pledgor covenants that it will defend the collateral against the claims and demands of all other parties, to keep the collateral free from all liens and encumbrances, and not to sell, transfer, assign, deliver, pledge, hypothecate or otherwise dispose of the Interest or any part therein.

30.    Events of Default. The occurrence of any of the following shall constitute an event of default ("Event of Default") hereunder:

(a)    Default by Pledgor. The default or the failure of Pledgor to perform any of the Obligations; provided, that, in the event of a good-faith dispute between Pledgor and Pledgee as to whether Pledgor has complied with its Obligations then there shall be no default under this Agreement until Pledgee exercised commercially reasonable efforts to resolve such dispute; provided, that the foregoing shall not be deemed to require the commencement of litigation. In the event of a default by Pledgor of any of the Obligations, Pledgee shall provide written notice of such default to Pledgor, and Pledgor shall have thirty (30) days from such notice to cure such default.

(b)    Liens on Interest. The initiation of steps by any third party to obtain a lien, levy or writ of attachment or garnishment upon the Interest or to affect the Interest by other legal process, unless the same is dismissed within thirty (30) days after the initiation thereof.

(c)    Certain Transfers. The transfer of the Interest by Pledgor under circumstances which would entitle a trustee in bankruptcy or similar fiduciary to avoid such transfer under the federal bankruptcy laws, as amended, or under any other laws, whether federal or state, for the relief of debtors or avoidance of transfers and/or conveyances, now or hereafter existing, or the direct or indirect assignment, sale, exchange or transfer of the Interest, in whole or in part, without the prior written consent of Pledgee.

(d)    Default in Performance. The failure of Pledgor to perform this Agreement, or any breach of any representation, warrant, covenant or agreement contained in this Agreement

and the continuation of such failure for at least thirty (30) days following Pledgee's written notice thereof to Pledgor.

(c)   Pledgor's Bankruptcy.   The entry of a decree or order by a court of competent jurisdiction adjudging Pledgor bankrupt or insolvent, or approving a petition seeking reorganization, arrangement, adjustment or composition of or in respect of Pledgor, under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, and the continuance of any such decree or order unstayed and in effect for a period of 60 days; or the commencement by Pledgor of a voluntary case under federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or similar law, or the consent by Pledgor to the institution of bankruptcy or insolvency proceedings against him, or the filing by Pledgor of a petition or answer or consent seeking reorganization or relief under federal bankruptcy law or any other applicable federal or state law, or the consent by Pledgor to the filing of such petition or to the appointment of a receiver, liquidator, assignee, trustee, sequestrator or similar official of Pledgor or of any substantial part of the property of Pledgor, or the making by Pledgor of an assignment for the benefit of creditors, or the admission by Pledgor in writing of his inability to pay his debts generally as they become due, or the taking of corporate action by Pledgor in furtherance of any such action.

31.   Remedies upon Default.   If an Event of Default under this Agreement shall occur and be continuing prior to the termination of this Agreement (as provided herein), Pledgee shall have such rights and remedies with respect to the Interest or any part of the Interest as are provided by the Uniform Commercial Code as enacted in the Commonwealth of Virginia, and such other rights and remedies with respect to the Interest that Pledgee may have at law or in equity or under this Agreement.   Upon any such default Pledgee shall have the right to (a) transfer to Pledgee's, name or into the name of its nominee or nominees, all or any portion of the Interest and thereafter receive, for the benefit of Pledgee all monies paid on the Interest, give all consents, waivers and ratifications in respect thereof, exercise all such rights, powers, privileges and preferences pertaining to the Interest, and otherwise act with respect to the Interest as though it was the outright owner of the Interest, or (b) after ten (10) days' notice of its intention to do so, sell all or any portion of the Interest at such place or places and at such time or times and in such manner as Pledgee may determine in an arms-length transaction or effected in any other commercially reasonable manner, at such prices and on such terms as Pledgee may deem best. To effectuate the provisions of this Agreement, Pledgor hereby irrevocably appoints and constitutes Pledgee as Pledgor's true and lawful attorney with full power of substitution upon and during the continuation of an Event of Default to complete and fill in any blank endorsements and resignations, to file the same and to take such further action as Pledgee may deem necessary to exercise all of its right, title and position in the Interest, whether or not such resignation or transfer is effected.   The power of attorney appointment made in this paragraph shall be deemed irrevocable and coupled with an interest.   Pledgee may enforce its rights and remedies under this Agreement without first proceeding against Pledgor.   Pledgor hereby waives (a) notice or judicial hearing in connection with Pledgee taking possession or disposition of the Interest, (b) damages occasioned by Pledgee taking possession of the Interest, (c) requirements as to the time, place and terms of the sale, and (d) rights of appraisal, valuation, stay or execution.

H-3

32.    Termination; Successors and Assigns.  Subject to Section 12(c) below, upon full performance of the Obligations, this Agreement shall terminate and be of no further force and effect. Until such time, this Agreement shall bind Pledgor, its successors and assigns, and shall inure to the benefit of Pledgee and its successors and assigns. Pledgor further agrees to execute such other instruments and documents as Pledgee may deem necessary or desirable to effectuate the purposes of this Agreement. If Pledgor has delivered to Pledgee any certificate representing the Interest, upon termination of this Agreement, Pledgee shall return said certificate(s) to Pledgor.

33.    Notices.  All notices and other communications here under shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested and postage prepaid, or by overnight courier and shall be addressed to the addresses set forth on the signature page hereto, or at such other address as may be supplied by written notice given in conformity with this Paragraph 9. Notice delivered personally shall be deemed to be effective upon receipt; notice sent by certified or registered mail shall be deemed effective three business days after the certificate or registration thereof; and notice sent by overnight courier shall be deemed effective on the next business day after delivery to the courier.

34.    Governing Law.  This Agreement has been executed and delivered and shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

35.    Severability.  The provisions of this Agreement are intended to be severable. If any provision of this Agreement shall for any reason be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or any other provision of this Agreement in any jurisdiction.

36.    Miscellaneous.

(a)    Expenses.  Pledgor agrees to reimburse Pledgee for any expenses incurred in connection with its enforcement of this Agreement.

(b)    Indemnity Obligation.  Pledgor does hereby covenant to indemnify and hold Pledgee harmless, from and against any and all claims, demands, losses, liabilities, costs and expenses of every kind and nature, arising from or relating to this Agreement or the Obligations.

(c)    Reinstatement.  If any claim is ever made on Pledgee for repayment or recovery of any amount or amounts received by Pledgee in payment, or on account of any of the Obligations and Pledgee repays all or part of such amount(s), or performance is otherwise rescinded, Pledgor will be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Pledgee notwithstanding any termination hereof or any cancellation of any instrument evidencing the Obligations.

(d)    Entire Agreement; Amendment.  This Agreement, together with the documents and instruments referred to herein, embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof. The terms and

H-4

provisions of this Agreement may be modified or amended only by written agreement executed by all parties hereto.

{Remainder of page left intentionally blank.  Signature page follows.}

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Agreement as of the day first written above. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, but all such counterparts together shall constitute one and the same agreement. Facsimile and pdf. signatures will be deemed originals for all purposes.

PLEDGOR:                         JORDAN TOBINS


                                 Address for Notice Purposes:

                                 c/o Scott C. Ford, Esq.

                                 Mintz Levin

                                 One Financial Center

                                 Boston, MA 02111


PLEDGEE:                         JOSHUA HUGGARD


                                 Address for Notice Purposes:

                                 c/o Franklin Levy, Esq.

                                 Lawson & Weitzen, LLP

                                 88 Black Falcon Avenue

                                 Boston, MA  02210

                                 BRENDAN HIGGINS, JR


                                 Address for Notice Purposes:

                                 c/o Franklin Levy, Esq.

                                 Lawson & Weitzen, LLP

                                 88 Black Falcon Avenue

                                 Boston, MA  02210


                                 H-6

6694879v.12

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (EASTERN DIVISION)

|  |  |
|---|---|
| In re:<br><br>THE UPPER CRUST, LLC, *et al.* [1],<br><br>      Debtors. | Chapter 11<br>Case No. 12-18134-HJB<br>(Jointly Administered) |

|  |  |
|---|---|
| DITMARS LIMITED,<br><br>      Plaintiff<br><br>v.<br><br>THE UPPER CRUST, LLC, THE UPPER CRUST-BACK BAY, LLC, THE UPPER CRUST-FENWAY, LLC, THE UPPER CRUST-HARVARD SQUARE, LLC, THE UPPER CRUST-HINGHAM, LLC, THE UPPER CRUST-LEXINGTON, LLC, THE UPPER CRUST-STATE STREET, LLC, THE UPPER CRUST SOUTH END, LLC, THE UPPER CRUST-PENNSYLVANIA AVENUE, LLC, THE UPPER CRUST-DC, LLC, THE UPPER CRUST-WALTHAM, LLC, THE UPPER CRUST-WATERTOWN, LLC, THE UPPER CRUST-WELLESLEY, LLC and JJB HANSON MANAGEMENT, INC.<br><br>      Defendants. | Adversary Proc. No. _____ |

---

[1] The related cases jointly administered with the case of Upper Crust, LLC ("Upper Crust") are The Upper Crust-Back Bay, LLC (Case No. 12-18135) ("Upper Crust-Back Bay"), The Upper Crust-Fenway, LLC (Case No. 12-18136) ("Upper Crust-Fenway"), The Upper Crust-Harvard Square, LLC (Case No. 12-18137) ("Upper Crust-Harvard"), The Upper Crust-Hingham, LLC (Case No. 12-18138) ("Upper Crust-Hingham"), The Upper Crust-Lexington, LLC (Case No. 12-18139) ("Upper Crust-Lexington"), The Upper Crust-State Street, LLC (Case No. 12-18140) ("Upper Crust-State Street"), The Upper Crust South End, LLC (Case No. 12-18142) ("Upper Crust-South End"), The Upper Crust-Pennsylvania Avenue, LLC (Case No. 12-18143) ("Upper Crust-Penn. Ave."), The Upper Crust-DC, LLC (Case No. 12-18148) ("Upper Crust-DC"), The Upper Crust-Waltham, LLC (Case No. 12-18144) ("Upper Crust-Waltham"), The Upper Crust-Watertown, LLC (Case No. 12-18145) ("Upper Crust-Watertown"), The Upper Crust-Wellesley, LLC (Case No. 12-18146) ("Upper Crust-Wellesley") and JJB Hanson Management, Inc. (Case No. 12-18147) ("JJB") (collectively, the "Debtors").

Case 12-01293    Doc 2-2    Filed 10/19/12    Entered 10/19/12 14:42    Desc Main
Document    Page 73 of 85

**COMPLAINT TO IMPOSE CONSTRUCTIVE TRUST
ON FUNDS IMPROPERLY OBTAINED BY THE DEBTORS**

<u>INTRODUCTION</u>

Ditmars Limited ("Ditmars Ltd.") brings this action (the "Complaint") pursuant to section

105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal

Rules of Bankruptcy Procedure to impose a constructive trust on up to $250,000 in possession of

the Debtors or their agents that appears to have been improperly converted or retained by the

Debtors and their agents immediately prior to the filing of the Debtors' Chapter 11 cases.

<u>PARTIES AND JURISDICTION</u>

1.      Ditmars Ltd. is an entity organized in the British Virgin Islands and managed by

Quabbin Capital, Inc., a corporation duly organized and existing under the laws of the State of

Delaware, with a usual place of business at 160 Federal Street, Boston, Massachusetts.

2.      On information and belief, the defendant, Upper Crust, is a limited liability

company duly organized and existing under the laws of the Commonwealth of Massachusetts,

with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

3.      On information and belief, the defendant, Upper Crust-Back Bay, is a limited

liability company duly organized and existing under the laws of the Commonwealth of

Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston,

Massachusetts.

4.      On information and belief, the defendant, Upper Crust-Fenway, is a limited

liability company duly organized and existing under the laws of the Commonwealth of

Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston,

Massachusetts.

2

5.      On information and belief, the defendant, Upper Crust-Harvard is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

6.      On information and belief, the defendant, Upper Crust-Hingham is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

7.      On information and belief, the defendant, Upper Crust-Lexington is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

8.      On information and belief, the defendant, Upper Crust-State Street is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

9.      On information and belief, the defendant, Upper Crust-South End is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

10.     On information and belief, the defendant, Upper Crust-Penn Ave. is a limited liability company duly organized and existing under the laws of the District of Columbia, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

11.    On information and belief, the defendant, Upper Crust-Waltham is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

12.    On information and belief, the defendant, Upper Crust-Watertown is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

13.    On information and belief, the defendant, Upper Crust-Wellesley is a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 55 Food Mart Road, Boston, Massachusetts.

14.    On information and belief, the defendant, JJB is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 89 Commercial Wharf, Boston, Massachusetts.

15.    On October 4, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

16.    the Debtors continue to operate as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code and no trustee or committee has been appointed in the Debtors' cases at this time.

17.    This Court has jurisdiction over the claims brought by Ditmars Ltd. in accordance with the provisions of 28 U.S.C. §§ 157(b)(2)(A) and (O) and 1334(b).  Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

18.     The claims advanced in this Complaint are core proceedings.  In the event that

Ditmars Ltd.'s claims are deemed to be non-core proceedings, Ditmars Ltd. reserves its rights to

have the District Court enter any final orders or judgment.

FACTS COMMON TO ALL COUNTS

19.     The Debtors operate a chain of upscale pizza restaurants.

20.     Upper Crust is the parent company of the other Debtors, except for JJB.  The

membership interests of Upper Crust are owned 40% by Joshua Huggard ("Huggard"), 15% by

Brendan Higgins ("Higgins") and 45% by Jordan Tobins ("Tobins").  In June 2012 Higgins and

Huggard purported to terminate Tobins' right to participate in the management and operation of

Upper Crust and "locked" Tobins out of its offices.  Pursuant to a Settlement Agreement (defined

below), Tobins's equity interest in Upper Crust is held in Trust for Huggard and Higgins.

21.     JJB is a Massachusetts corporation that provides payroll, procurement and other

financial services for the other Debtors.  Higgins, Huggard and Tobins each own one-third of the

outstanding shares of JJB.  Pursuant to the Settlement Agreement, Tobins's equity interest in JJB

is held in Trust for Huggard and Higgins.  The other Debtors owned by Upper Crust operate

restaurants in various locations.

22.     Coletrain, Inc. ("Coletrain"), a Massachusetts corporation, is a non-Debtor

affiliate that owns and operates the Upper Crust restaurant at 20 Charles Street in Boston,

Massachusetts.  Coletrain owns "The Upper Crust" trademark (USPTO serial number

77346810).  Coletrain granted a non-exclusive, license to Upper Crust to use the trademark and

to sub-license the trademark to entities that Upper Crust controlled.  Tobins owns 80% of the

outstanding shares of Coletrain.  Higgins and Huggard each own 10% of the outstanding shares

of Coletrain. Pursuant to the Settlement Agreement, Huggard and Higgins hold these shares in trust for Tobins.

23.     Coleman, Inc. ("Coleman"), a Massachusetts corporation, is a non-Debtor affiliate that owns and operates the Upper Crust restaurant at 286 Harvard Street in Brookline, Massachusetts. Tobins owns 80% of the outstanding shares of Coleman. Higgins and Huggard each own 10% of the outstanding shares of Coleman. Pursuant to the Settlement Agreement, Huggard and Higgins hold these shares in trust for Tobins.

24.     Cocobling, LLC ("Cocobling"), a Massachusetts limited liability company, is a non-Debtor affiliate that franchises the "Upper Crust" brand to independently owned and operated franchisees. Presently, there are four franchise locations – one each in Newburyport, Massachusetts, Plymouth, Massachusetts, Portsmouth, New Hampshire, and West Roxbury, Massachusetts. The membership interests in Cocobling are owned 40% by Huggard, 15% by Higgins and 45% by Tobins. Pursuant to the Settlement Agreement, Huggard and Higgins hold their membership interests in trust for Tobins.

25.     On or about August 17, 2012, the Debtors, JJB, Huggard, Higgins, Cocobling, Daniel Hurley, Tobins, Coletrain, Coleman and Stephany Tobins entered into a Settlement Agreement and Mutual Release dated as of July 31, 2012 ("Settlement Agreement") pursuant to which the parties settled much-publicized claims among them.

26.     The Settlement Agreement required Tobins to pay or cause $250,000 to be paid to the Debtors before October 1, 2012.

27.     Ditmars Ltd. is an entity managed by Quabbin Capital, Inc. a Boston-based investment management firm whose portfolio includes private equity and mezzanine finance holdings. Tobins had been in negotiations with representatives of Ditmars Ltd. regarding a

possible investment in Coletrain and other entities. Tobins requested that Ditmars Ltd. advance

$250,000 to fund the payment due under the Settlement Agreement in contemplation of a future

business arrangement. Ditmars Ltd. initially conditioned such advance on Tobins obtaining an

agreement by the Debtors to use the funds to pay down certain trade liabilities to be determined.

Ultimately, Ditmars Ltd. conditioned the advance on Tobins obtaining an agreement by the

Debtors to pay the $250,000 directly to ZVI Construction Company, LLC ("ZVI"), who was

actively litigating with the Debtors and Tobins.

28.     Ditmars Ltd. was informed by counsel to Tobins, who had negotiated and

represented Tobins in documenting the Settlement Agreement, that the Debtors had agreed that

the Debtors' counsel, Franklin Levy, had agreed to hold the funds in escrow pending distribution

to ZVI. Ditmars Ltd. was provided with a copy of a written agreement between ZVI and the

Debtors that required payment of the $250,000. Attached as "Exhibit A" is a copy of an email

between counsel to Tobins and Mr. Levy in which Mr. Levy's interlineated response confirms

that funds to be wired by Ditmars Ltd. would be wired into his firms "escrow account" in

response to the inquiry by counsel to Tobins as to the mechanics for the payment to Levy of the

funds "to be paid to ZVI."

29.     In reliance on the escrow arrangements, Ditmars Ltd. wired $250,000 (the

"Escrow Funds") into the "escrow account" of Mr. Levy's firm on September 28, 2012.

30.     Four business days later, the Debtors filed their bankruptcy petitions. Ditmars

Ltd. now understands that the Escrow Funds were improperly disbursed to the Debtors.

31.     At the time of the filing (according to the Debtors' motion to use cash collateral),

the Debtors had approximately $158,000 in cash, plus $50,000 in an attorneys' clients' funds

account. Upon information and belief, the Debtors may have used some of the Escrow Funds to

pay: Mr. Levy approximately $21,000, its Chapter 11 counsel a retainer of approximately $50,000, filing fees of $14,000, and workers compensation insurance premiums of approximately $40,000.

32.    Apparently the Debtors have alluded to the fact that they may take the position that the Settlement Agreement is not enforceable[2] or could be rejected as an executory contract. Ditmars Ltd. is not a party to the Settlement Agreement, but whether the Agreement is enforceable against some or all parties is not relevant to the relief requested by Ditmars Ltd. If the Settlement Agreement is effective, the funds paid by Ditmars Ltd. should be paid to ZVI. If it is found that the Settlement Agreement is not enforceable, the funds should be held in trust for and returned to Ditmars Ltd.

33.    The Escrow Funds were paid into escrow with counsel to the Debtors and designated for a specific purpose. The Debtors and their counsel improperly took those funds from escrow and appear to have used a portion of the funds. Moreover, the timing of the Debtors' bankruptcy filings in relation to the payment of the Escrow Funds clearly suggests that the Debtors and their agents accepted the payment of the Escrow Funds with the intention of misappropriating those funds and possibly not honoring the Settlement Agreement.

34.    At the time of the Petition Date (according to the Debtors' motion to use cash collateral and representations at the hearing on use of cash collateral), the Debtors had approximately $158,000 in cash, plus $50,000 in an attorneys' clients' funds account. Ditmars Ltd. will need to verify this through discovery and will seek to determine whether $208,000 has been the lowest intermediate balance in the Debtors' accounts. The Debtors' cash flow

---

[2] Ditmars Ltd. would expect that parties to the Settlement Agreement would vigorously oppose this position.

projections (Exhibit A, Doc # 11-1) project that the Debtors' cash balance will have increased since the Petition Date.

## COUNT I[3]
### (Imposition of Constructive Trust)

35.    Ditmars Ltd. incorporates herein the allegations set forth in Paragraphs 1 through 34 in their entirety as if set forth herein.

36.    The Debtors and/or their agents obtained title to the Escrow Funds by fraud and in violation of a fiduciary duty.

37.    The Debtors and/or their agents have been unjustly enriched by the acquisition of the Escrow Funds at the expense of Ditmars Ltd. and/or ZVI.

38.    The Debtors and/or their agents are constructive trustees of the Escrow Funds for the benefit of Ditmars Ltd. and/or ZVI.

### PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Ditmars Ltd., requests that this Court grant the following relief:

1.    Enter an Order on Count I of the Complaint imposing a constructive trust on $250,000 (or such other amount as is determined by the Court) in possession of the Debtors and/or their agents;

2.    Enter an order on Count I of the Complaint directing the Debtors and/or their agents to remit the funds held in the imposed constructive trust be paid over to Ditmars Ltd. and/or ZVI subject to determination of the enforceability of the Settlement Agreement; and,

---

[3] Ditmars Ltd. reserves all claims, rights and remedies against parties other than the Debtors and reserves its rights to file proofs of claim or otherwise assert additional claims against the Debtors.

3.    Enter an Order granting such other relief as is just and proper.

Respectfully submitted,

DITMARS LIMITED,

By its Attorneys,

October 19, 2012                  /s/ Christopher J. Panos
                                  Christopher J. Panos (BBO# 555273)
                                  Joseph J. Koltun (BBO# 641117)
                                  Craig and Macauley Professional Corporation
                                  Federal Reserve Plaza
                                  600 Atlantic Avenue
                                  Boston, Massachusetts  02210
                                  Tel: (617) 367-9500
                                  Fax: (617) 742-1788
                                  panos@craigmacauley.com
                                  koltun@craigmacauley.com

# EXHIBIT A

**From:** Levy, Franklin [mailto:flevy@lawson-weitzen.com]
**Sent:** Tuesday, September 18, 2012 6:54 PM
**To:** Ford, Scott
**Subject:** RE: Upper Crust Transition

Scott — see my interlineations

Franklin H. Levy
Lawson & Weitzen LLP
88 Black Falcon Avenue
Suite 345
Boston, Ma. 02210
p. 617-603-3728
c. 702-403-0510

**From:** Ford, Scott [mailto:SCFord@mintz.com]
**Sent:** Monday, September 17, 2012 11:48 AM
**To:** Levy, Franklin
**Subject:** Upper Crust Transition

Franklin:

Here is a list of issues that we'll need to address — please give me a call to discuss.  Obviously, there may be additional items, so please identify those as well.  Thanks.

-**Payment** ($250k on or before October 1 — to you to pay ZVI)
I will send you my firm's escrow wire info.


[REDACTED.  Text has been redacted that may be proprietary or confidential information of the Debtors or others.  It is available for *in camera* review and the Debtors possess a copy of the full email.]



Thanks.

Scott


Scott Ford | Member
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center | Boston, MA 02111
Direct: (617) 348-1744 | Mobile: (781) 771-2538 | Fax: (617) 542-2241
E-mail: SCFord@mintz.com
Web: www.mintz.com



MINTZ LEVIN
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

**FORM 104 (10/06)**

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Ditmars Limited | The Upper Crust LLC, The Upper Crust-Back Bay, LLC, The Upper Crust-Fenway, LLC, The Upper Crust-Harvard Square, LLC, The Upper Crust-Hingham, LLC, The Upper Crust-Lexington, LLC, The Upper Crust-State Street, LLC, The Upper Crust South End, LLC, The Upper Crust-Pennsylvania Avenue, LLC, The Upper Crust-DC LLC, The Upper Crust-Waltham, LLC, The Upper Crust-Watertown, LLC, The Upper-Crust Wellesley, LLC and JJB Hanson Management, Inc. |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| Christopher J. Panos, Craig and Macauley Professional Corporation, 600 Atlantic Avenue, Boston, MA 02110 (617) 367-9500 | Harold B. Murphy, Murphy & King, P.C., One Beacon Street, 21st Floor, Boston, MA 02108 (617) 423-0400 |

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

The plaintiff seeks an order imposing a constructive trust on funds improperly converted by or transferred to the defendant debtors

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny (**continued next column**)

**FRBP 7001(6) - Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
- ☐ 71-Injunctive relief - reinstatement of stay
- ☐ 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
- ☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ up to $250,000 |

**Other Relief Sought**

**FORM 104 (10/06), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>   The Upper Crust, LLC, et al. (jointly administered) | BANKRUPTCY CASE NO.<br>12-18134 |

| DISTRICT IN WHICH CASE IS PENDING<br>   Massachusetts | DIVISIONAL OFFICE<br>   Boston | NAME OF JUDGE<br>   Hon. Henry J. Boroff |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

| DATE<br>   October 19, 2012 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>   Christopher J. Panos |
|---|---|

Print Form

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.