UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> UPPER CRUST, LLC, ET. AL. <br><br> Debtors. <br><br> MARK G. DEGIACOMO, <br> CHAPTER 7 TRUSTEE OF THE UPPER CRUST LLC, ET AL, <br><br><br> Plaintiff, <br><br> v. <br><br> JORDAN TOBINS and <br> STEFANY TOBINS, <br><br> Defendants. | CHAPTER 7 <br> CASE NO. 12-18134-HJB <br><br><br><br><br><br><br> ADVERSARY <br> PROCEEDING <br> NO. 14-01163 |

**DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND
CROSS-MOTION FOR SUMMARY JUDGMENT**
**(Memorandum of Law Incorporated)**

Pursuant to Fed. R. Civ. P. 56 (made applicable in adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure), Defendants Jordan and Stefany Tobins (collectively, the "Tobins") oppose the Trustee's Motion for Summary Judgment and cross-move for Summary Judgment establishing that they are entitled to judgment of dismissal as a matter of law.

**INTRODUCTION**

This is an action by the Trustee to recover proceeds allegedly fraudulently transferred

1

ME1 22587014v.1

from the Upper Crust, LLC ("Upper Crust") to Jordan Tobins ("Jordan"), a former member and manager of the Upper Crust, and his now-wife, Stefany Tobins ("Stefany"), a former employee of the Upper Crust. Although the Trustee acknowledges that, by a pre-petition Settlement Agreement and Mutual Release (the "Settlement Agreement"), the Upper Crust released all of its claims against the Tobins, including claims for the alleged diversion of proceeds, he claims that the Settlement Agreement is "not applicable." Specifically, the Trustee maintains that he is asserting claims to recover these proceeds pursuant to his avoidance powers and, because he stands in the shoes of an general unsecured creditor (and not the debtor), the Settlement Agreement does not bar his claims.

The Trustee's attempt to avoid the Settlement Agreement under his avoidance powers fails as a matter of law. First, the Trustee lacks standing to assert any claims for fraudulent conveyance because the claims are not property of the estate and are not, therefore, subject to avoidance either 11 U.S.C. §§ 544 or 548. Rather, the Upper Crust waived and released all claims against the Tobins, including the right to seek the return of the funds allegedly diverted, in exchange for payment of $250,000 before it filed for bankruptcy.[1] Second, the Trustee has failed to identify any general unsecured creditor that had a claim for fraudulent conveyance against either Jordan, a corporate officer, or Stefany, an employee. Nor can he because any claim under 11 U.S.C. §544 against the Tobins is derivative and may only be asserted through the Upper Crust. As a result, the Motion should be denied and the Cross-Motion should be allowed.

---

[1] As a condition precedent for any of the Trustee's claims, he would be required to challenge the applicability of Settlement Agreement, which he has not done.

## UNDISPUTED MATERIAL FACTS[2]

1. In or around 2005, Jordan, Joshua Huggard ("Huggard") and Brendan Higgins ("Higgins") formed the Upper Crust, which was the sole member of approximately fourteen (14) single-asset limited liability companies, which did business as the Upper Crust. (Affidavit of Richard Briansky ("Briansky Aff."),¶ 2, Chapter 7 Trustee's Response to Defendants' Request for Admission (the "Response") No. 1, a genuine copy of which is attached to the Briansky Aff. as **Exhibit A**.)

2. On or about April 5, 2012, the Upper Crust, among others, filed an action against Jordan and Stefany, two other corporations formed by Jordan (Coletrain LLC and Coleman LLC), and the Upper Crust's former accountant in Massachusetts Superior Court, Suffolk County, C.A. No. 12-1346 (the "Lawsuit"). (Briansky Aff. ¶ 3, Compliant, a genuine copy of which is attached to the Briansky Aff. as **Exhibit B**; **Exhibit A**, Response Nos. 11, 12.) The Upper Crust sought to recover money allegedly diverted by Jordan and others for personal purposes. (**Exhibit B**.) In particular, the Lawsuit alleged *inter alia* that:

- "Beginning in or about the end of 2007, Jordan commenced a course of conduct that would …systematically loot Upper Crust;"

- "Jordan charged over $750,000 [to corporate credit cards] for purposes that had no relationship whatsoever to the Upper Crust business;" and

- "Jordan misused corporate checks for personal expenses, including the down payment on a personal residence, furnishing and improving three residences, boat maintenance and dockage, and the lease of three Mercedes Benz cars."

(Id.; **Exhibit A**, Response Nos. 14-17.)

---

[2] To avoid excessive duplication the Tobins incorporate by reference their previously submitted statement of material facts and limit the material facts to only those necessary to determine the issues raised by the Court.

3

3. By "Settlement Agreement And Mutual Release" dated July 31, 2012, the Upper Crust[3] agreed that in exchange for a payment of $250,000 and other assumption of debt by Jordan that it "shall" dismiss the litigation "with prejudice," release the Tobins, and would not to "file, charge, claim or sue" the Tobins. (Briansky Aff. ¶ 5; Settlement Agreement, a genuine copy of which is attached to the Briansky Aff. as **Exhibit D**; **Exhibit A**, Response No. 19.)

4. On September 28, 2012, Jordan caused $250,000 to be paid to the Upper Crust by having the funds wired to the Upper Crust's counsel. (Briansky Aff. ¶ 6; Deposition Transcript of Mark DeGiacomo ("DeGiacomo Tr.") at 64, a genuine copy of which is attached to the Briansky Aff. as **Exhibit E**.)

5. On October 4, 2012, the Upper Crust filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. (**Exhibit A**, Response No. 37.)

6. On March 6, 2013, the Upper Crust's cases were converted to Chapter 7 and Mark DeGiacomo was appointed as the Chapter 7 trustee.

7. On August 13, 2014, the Trustee filed an Adversary Complaint against the Tobins claiming that the Tobins diverted funds from the Upper Crust to themselves. (**Exhibit A**, Response No. 50; Adversary Complaint.)

8. The Adversary Complaint alleges that:

- "[B]eginning in or around the end of 2007, Jordan began transferring funds belonging to the Debtors to himself to pay for personal expenses and to support his extravagant lifestyle with his then girlfriend and alleged employee of the Debtors, Stefany;"

---

[3] The Settlement Agreement defines "Upper Crust" as "The Upper Crust, LLC as well as any and all members, managers, shareholders, owners, principals, parents, subsidiaries…predecessors, successors and representatives."

4

ME1 22587014v.1

- "During the period of October 4, 2008 through the Petition Date, the Debtors transferred, other than salary, a total of $1,372,592.00 to or for Jordan's benefit (the 'Four-Year Transfers to Jordan'). These transfers were used to pay for personal real estate or other personal expenses . . . .;" and

- "During the period of October 4, 2008 through the Petition Date, the Debtors transferred, other than salary, a total of $49,934.00 to Stefany (the 'Four-Year Transfers to Stefany [sic]) an alleged employee who actually performed little or no services for the Debtors. These transfers were made to or for Stefany's benefit to pay personal expenses and to pay insurance premiums . . . ."

(Adversary Complaint at ¶¶ 13-15.) Based upon these factual allegations, the Trustee asserted then claims for fraudulent conveyance against the Tobins. (Adversary Complaint.) The claims include:

- an avoidance claim under 11 U.S.C. § 548 (Count I);

- avoidance claims under 11 U.S.C. § 544(b) and M.G.L.c. 109A (Count III and V) against Jordan; and

- avoidance claims under 11 U.S.C. § 544(b) and M.G.L.c. 109A (Count IV, VI) against Stefany.[4]

(Adversary Complaint, Counts I, III, IV, V, and VI.)

## ARGUMENT

## I.    TRUSTEE LACKS STANDING TO ASSERT THE CLAIMS.

By its plain language, the Settlement Agreement signed by the debtor (the Upper Crust) released all of the claims against the Tobins pre-petition in exchange for, *inter alia*, a payment of

---

[4] There is no claim against Stefany under 11 U.S.C. § 548.

5

ME1 22587014v.1

$250,000. The estate, therefore, has no fraudulent conveyance claims to assert and the Trustee lacks standing. Under Chapter 7 of the Bankruptcy Code, a trustee is appointed as a representative of the estate and is vested with control over the property of the estate, including causes of action that arose pre-petition. 11 U.S.C. §§ 323(a), 704. Where a debtor releases its claims pre-petition, those claims are not property of the estate and cannot be asserted by the trustee post-petition.

> To the extent that . . . released claims and rights arose under applicable nonbankruptcy law (such as a claim for aiding and abetting breach of fiduciary duty or under a theory of deepening insolvency), a prebankruptcy release should be enforceable. This conclusion follows the general principal that the bankruptcy estate acquires only the property and claims of the debtor has they existed immediately before the bankruptcy case was filed. Thus, if the debtor gave up his claims before the bankruptcy was filed, the released claims are not property of the bankruptcy estate . . . Further, it is well established that a trustee in bankruptcy stands in the shoes of a debtor and takes subject to all defenses that might have been asserted against the debtor. Therefore, if the relesase would bar claims by a debtor, the release should also bar claims by its successor-in-interest, the trustee.

Risa Lynn Wolf-Smith, Forbearance Agreement Releases Should Be Enforceable In Bankruptcy, 31-FEB Am. Bankr. Inst. J. 26 (2012).

Here, the Upper Crust had a property interest in the claims originally asserted in the Lawsuit. These claims included breach of fiduciary duty, conversion, and unjust enrichment, all of which were based upon Jordan and Stefany's alleged diversion of proceeds. By signing the Settlement Agreement and releasing all of its claims against Jordan and Stefany, the Upper Crust converted its claims into $250,000 in proceeds and other rights through the Settlement Agreement. The Settlement Agreement and associated rights and payments then became property of the estate. See In re FBN Food Serv., Inc., 175 B.R. 671, 684 (Bankr. N.D. Ill. 1994) (noting that claims of a debtor may be converted into a settlement amount and that amount is

considered property of the estate).  As a result, absent a challenge to the Settlement Agreement itself as a fraudulent transfer, the estate has no property interest in the released claims and the Trustee has no standing to assert them.  See FBN Food Service, Inc., 175 B.R at 684 (recognizing that a settlement agreement may be a transfer voidable under § 548).

Nor can the Trustee attempt to avoid this conclusion by relying upon his avoidance powers in either 11 U.S.C. §§ 544 or 548.  A specific requirement for avoiding transfers under these sections is that the debtor have an interest in the property transferred.  11 U.S.C. §§ 544, 548 (transfer was a "transfer of an interest of the debtor in property.")  Although not defined, courts interpret the phrase "interest of the debtor in property" to refer to property that, but for the transfer, would have been property of the estate within the meaning of 11 U.S.C. § 541 and would have been available for the benefit of the debtor's creditors.  In re Ogden, 314 F.3d 1190 (10th Cir. 2002) ("[p]roperty of the debtor subject to [Sections 544, 547 and 548] is best understood as that property that would have been part of the estate had it not been transferred before the commencement of [the case]."); see also Matter of Besing, 981 F.2d 1488 (5th Cir. 1993) ("For 548 purposes, interest of debtor in property refers to property which would have been preserved for the benefit of the estate absent the transfer").  If the debtor had legal rights to the property, the debtor has an interest in the property within the meaning of this section and any transfer of an interest can be avoided.  See In re Whitley, 463 B.R. 775 (Bank. M.D. N.C. 2012) (funds transferred by debtor were interest of the debtor in property even though debtor operated Ponzi scheme and funds were initially fraudulently procured by investors); In re Ryan, 472 B.R. 714 (Bankr. E.D. 2012) (debtor had right stop funds under power of attorney although not full ownership interest and thus transfer of funds was a transfer of interest of the debtor in property).

7

As discussed above, in this case, the Upper Crust has no claims direct, contingent or otherwise to the funds allegedly diverted by Jordan or Stefany because the Upper Crust released its claims in exchange for a payment of $250,000 and other rights.  Specifically, under the Settlement Agreement, the Upper Crust agreed to:

> remise, release and forever discharge the Tobins Parties of and from any and all debts, actions, causes of, [sic] action, suits, accounts, covenants, contracts, omissions, liens, controversies, agreements, damages, and any and all claims, sums of money, demands and liabilities whatsoever of every name and nature, both in law and equity, known or unknown, direct or derivative, which [the Upper Crust] now have or ever had against any of the Tobins Parties, including those claims which were or could have been asserted in the Litigation.

The Trustee nevertheless claims that under 11 U.S.C. § 548 he has the "ability to avoid" the terms of the Settlement Agreement.  Memorandum at 5-6. But without first challenging and invalidating the terms of the Settlement Agreement, the Trustee has no property to recover. Moreover, even if there was property to recover, the Trustee has failed to justify avoiding the terms and benefits ($250,000) received as a result of the Settlement Agreement.  Instead, the Trustee relies upon a single case issued from the Middle District of Florida refusing to apply the equitable defense of *in pari delicto*.  In re. Pearlman, 472 B.R. 115, 121-22 (Bankr. M.D. Fla 2012).  In Pearlman, the court concluded that a *in pari delicto defense* based upon conduct of the debtor was inapplicable to the Trustee.  Id. at 123 ("When the application of the doctrine would not be in the public interest, such as where a trustee is seeking to recover assets fraudulently transferred in furtherance of a Ponzi scheme courts will allow the trustee to proceed.").  The court in Pearlman, therefore, recognized that a defense based upon the debtor's conduct is inapplicable to the Trustee exercising his avoidance powers and applying the defense would harm innocent creditors which otherwise would be the beneficiaries of the claim.  See In re

Personal and Business Insurance Agency, 334 F.3d 239 (3d Cir. 2003) ("under Pennsylvania law equitable defenses such as the doctrine of imputation that may be sustainable against the corporation may fail to act as a total bar to recovery when the beneficiaries of the action are the corporation's innocent creditors").

In this case, the Trustee cannot avoid the Settlement Agreement by exercising his rights under either section 544 or 548. Neither the status as an unsecured creditor nor the ability to independently prosecute a fraudulent conveyance claim on behalf of the estate alter the property rights released by the Upper Crust in exchange for a payment of $250,000 through the Settlement Agreement. Unlike Pearlman, where the claim was property of the estate and the defense was based upon the status of the Trustee, here the Settlement Agreement eliminated any right to assert any claim on behalf of the estate. By allowing the continued prosecution of the claims, the Trustee (and the estate) may have the ability to collect twice for the same alleged misconduct.

## II. THE CLAIMS ASSERTED BY THE TRUSTEE ARE DERIVATIVE AND, THEREFORE, BARRED BY THE TERMS OF THE RELEASE.

The Trustee maintains that he is entitled to prosecute the claims previously-released by the Upper Crust in the Settlement Agreement because he is "standing in the shoes of an unsecured creditor." This is simply incorrect as a matter of law. 11 U.S.C. § 544 (b) provides in relevant part that:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor **that is voidable under applicable law by a creditor holding an unsecured claim** that is allowable under section 503 of this title or that is not allowable only under section 502(e).

Id. (emphasis added). Therefore, "'section 544 "strong-arm" provision of the Code allows the trustee to "step into the shoes" of a creditor in order to nullify transfers voidable under state

9

fraudulent conveyance acts for the benefit of all creditors.'" In re Bliss Techs., Inc., 307 B.R. 598, 604 (Bankr. E.D. Mich. 2004) (quoting Corzin v. Fordu (In re Fordu), 201 F.3d 693, 698 (6th Cir.1999)). The Trustee must prove "the existence of a qualified unsecured creditor who could bring the same avoidance action the Trustee is bringing." Lassman v. Goldstein, 194 B.R. 1 (Bank. D. Mass. 1996). Only "[s]o long as such creditor exists, [may] the trustee . . . assert the creditor's avoidance rights for the benefit of the entire bankruptcy estate and all its creditors . . . . in the amount of the creditor's claim." In re Lowenstein, 312 B.R. 6, 12 (Bankr. D. Mass. 2003). Further, by asserting the creditor's rights, the Trustee is subject to any defenses that could be asserted against the creditor. Brent Explorations Inc., v. Karst Enters., Inc., 31 B.R. 745, 748 (Bankr. D. Colo. 1983) ("If the creditor is estopped or barred from recovery for some…reason, so is the trustee." ); see also In re Sheffield Steel Corp., 320 B.R. 42, 4533 (Bankr. N.D. Ok 2004) ("The general result is that the trustee obtains no greater rights than the unsecured creditor who was entitled to pursue the avoidance action."); Belfance v. Bushey, 210 BR 95, 100 (B.A.P. 6th Cir. 1997) (trustee is subject to any defenses that could be asserted against the unsecured creditor).

Here, the Trustee has failed to identify an unsecured creditor that could void the transfers allegedly made by Jordan (a member of the Upper Crust) or Stefany (an employee of the Upper Crust) to themselves because a third party unsecured creditor lacks standing to assert claims against a corporate officer or employee for diverting corporate assets. It is well-settled under Massachusetts law that if a corporate officer "improperly removes assets from a corporation, or diverts assets away from it, the wrong is normally inflicted on the corporation itself, and recovery should be made on behalf of the corporation." Butler v. Moore, No. 10-10207-FDS, 2015 WL 1409676, at *87 (D. Mass. Mar. 26, 2015) (Saylor, J.); see also Bessette v. Bessette,

10

385 Mass. 806 (1982) ("It is a basic principle of corporate law that if a majority shareholder receives a corporate cash distributions and a salary in excess of the reasonable value of the services rendered, the right to recover the overpayments belongs to the corporation.").

Here, the Trustee has alleged that Jordan and Stefany diverted corporate funds which deprived the corporation of assets.   Specifically, the Trustee claims that:

- Jordan transferred "funds belonging to the debtors to himself to pay for personal expenses and to support his extravagant lifestyle; that the "transfers"  "were used to pay for personal real estate and other personal expenses" "not attributable to the Debtors' business operations."   (Comp. ¶¶ 13, 14); and

- The Debtors transferred to Stefany a "total of $49,934.00," that these "transfers were made to or for Stefany's benefit to pay personal expenses and to pay insurance premiums for coverage to which she was not entitled," that "these transfers were not attributable to the Debtors' business operations or to reasonable compensation for Stefany's employment with the Debtors." (Comp. ¶ 15)

Thus, any loss sustained was through the misuse of corporate assets and the corporation – not a third party unsecured creditor – has the ability to assert claims to recover the funds.  Since there is no unsecured creditor that could avoid the transfers allegedly made by the Tobins to themselves, the Trustee can assert no such claims.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Court should deny the Trustee's Motion for Summary Judgment and grant the Tobins' Cross-Motion for Summary Judgment.

11

JORDAN TOBINS and
STEFANY TOBINS
By their attorneys,

*/s/ Richard Briansky*
Richard Briansky (BBO# 632709)
Amy B. Hackett (BBO# 676345)
McCarter English, LLP
265 Franklin Street
Boston, MA 02110
Phone: (617) 449-6500
Fax:   (617) 607-9312
rbriansky@mccarter.com
ahackett@mccarter.com

Dated: May 25, 2016

## CERTIFICATE OF SERVICE

I, Richard Briansky, hereby certify that this document was filed through the Court's ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 25, 2016.

*/s/ Richard Briansky*

ME1 22587014v.1