UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER 7 |
| UPPER CRUST, LLC, ET. AL. ) | CASE NO. 12-18134-HJB |
| ) | |
| Debtors. ) | |
| ) | |
| MARK G. DEGIACOMO, ) | |
| CHAPTER 7 TRUSTEE OF THE UPPER CRUST ) | |
| LLC, ET AL, ) | |
| ) | ADVERSARY |
| ) | PROCEEDING |
| ) | NO. 14-01163 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JORDAN TOBINS and ) | |
| STEFANY TOBINS, ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR RECONSIDERATION

Defendants Jordan and Stefany Tobins (collectively, the "Tobins") move for

reconsideration of a Memorandum and Order dated July 20, 2016 (the "Order").  Specifically,

the Tobins, pursuant to Federal Rules of Civil Procedure 54(b)[1] requests that Court revise the

Order or in the alternative refer the matter to the United States District Court for the District of

Massachusetts because the Bankruptcy Court lacks jurisdiction to enter final judgment on the

Tobins' Counterclaim and their Third Affirmative Defense.

---

[1] Rule 54(b) expressly authorizes the Court to reconsider, set aside or amend interlocutory
orders at any time before judgment enters.  A review under Rule 54 is not subject to the
restrictive standards set forth in Rules 59 and 60.  To the extent the Court opines that Rule 54 is
inapplicable, it nevertheless has authority to reconsider its Order under Rule 59.

1

## INTRODUCTION

This is an action by the Trustee to recover proceeds allegedly transferred fraudulently from the Upper Crust, LLC ("Upper Crust") to Jordan Tobins ("Jordan"), a former member and manager of the Upper Crust, and his now-wife, Stefany Tobins ("Stefany"), a former employee of the Upper Crust.  In response to the action, the Tobins claimed that a prepetition "Settlement Agreement And Mutual Release" (the "Settlement Agreement") between the Upper Crust and Tobins barred the Trustee's claims.

By its Order, the Court rejected the Tobins' defense and entered judgment in favor of the Trustee dismissing the Tobins' Counterclaims and the Tobins' Third Affirmative (that the Trustee's claims are barred by a "Settlement Agreement and Mutual Release.")  To justify its conclusion, the Order represented that "[E]ven assuming that the Settlement Agreement and the concomitant release of the Defendants is enforceable among the parties executing it and binding…the creditors of Upper Crust, in whose shoes the Trustee stands, cannot be included among that group" that released its claims.  "Accordingly, the Trustee is not bound by any terms of the Settlement Agreement…"  Order at 17.

The Order should be reversed or in the alternative this matter should be referred to the District Court with proposed findings of fact and rulings of law for adjudication by the United States District Court for the District of Massachusetts.  By signing the Settlement Agreement the Upper Crust released any claims to the money fraudulently transferred.  Without an interest in the property allegedly transferred fraudulent, neither the Trustee derivatively nor an unsecured creditor directly can assert a claim for fraudulent conveyance because there is no property to re-convey.  More fundamentally, through Settlement Agreement the Tobins repaid and satisfied any

ME1 23035178v.1

fraudulent conveyance claims, and therefore the Trustee's claims are barred under 11 U.S.C. §

550(a)(1). Even if the Court does not reverse, it should nevertheless issue proposed findings of

fact and rulings of law to the District Court because it lacks authority to issue a final decision on

either Tobins Counterclaims or their Third Affirmative Defense.

## **RELEVANT FACTS**

1.      On or about April 5, 2012, the Upper Crust, among others, filed an action against

Jordan and Stefany, two other corporations formed by Jordan (Coletrain LLC and Coleman

LLC), and the Upper Crust's former accountant in Massachusetts Superior Court, Suffolk

County, C.A. No. 12-1346 (the "Lawsuit").  The Upper Crust sought to recover money allegedly

diverted by Jordan and others for personal purposes.

2.      By "Settlement Agreement And Mutual Release" dated July 31, 2012, the Upper

Crust[2] agreed that in exchange for a payment of $250,000 and other assumption of debt by

Jordan that it "shall" dismiss the litigation "with prejudice," release the Tobins, and would not to

"file, charge, claim or sue" the Tobins (the "Settlement Agreement").

4.      On September 28, 2012, Jordan caused $250,000 to be paid to the Upper Crust by

having the funds wired to the Upper Crust's counsel.

5.      On October 4, 2012, the Upper Crust filed voluntary petitions for relief under

Chapter 11 of the United States Bankruptcy Code.

6.      On August 13, 2014, the Trustee filed an Adversary Complaint against the Tobins

claiming that the Tobins diverted funds from the Upper Crust to themselves.   In response to the

---

[2] The Settlement Agreement defines "Upper Crust" as "The Upper Crust, LLC as well as any and all members, managers, shareholders, owners, principals, parents, subsidiaries…predecessors, successors and representatives."

ME1 23035178v.1

Adversary Complaint, Tobins claimed, among other defenses, that the prepetition Settlement

Agreement barred the Trustee's claims.

7.    After Tobins and the Trustee filed Cross Motions for Summary Judgment, the

Court issued the Order. The Order recognized that

> The Trustee, exercising his "strong arm" powers relies upon 544
> (b) which authorizes a trustee to avoid 'any transfer of an interest
> of the debtor in property or any obligation incurred by the debtor
> that is voidable under applicable law by a creditor holding an
> unsecured claim that is allowable under section 502 of this title'
>
> * * *
>
> [544] puts the debtor in possession 'in the overshoes' of a creditor
>
> * * *
>
> In view of the authorities referenced above, the Court concludes
> that Defendants' Third Affirmative Defense lacks merit. Even
> assuming that the Settlement Agreement and the concomitant
> release of the Defendants is enforceable among the parties
> executing it …the creditors of Upper Curst in whose shoes the
> Trustee stands, cannot be included among that group.
> Accordingly, the Trustee is not bound by any terms of the
> Settlement Agreement, whether it can be constructed as a
> substituted contract or not. It follows, that the Defendants
> counterclaims against the Trustee also lack merit.

8.    By Order dated July 20, 2016, the Court granted

> [T]he Motion for Partial Summary Judgment filed by the Plaintiff,
> Mark G. DeGiacomo, the Chapter 7 Trustee of the estate of the
> Upper Crust LLC and related entities (collectively, the Upper
> Crust" or "Debtor") with respect to the Defendants' Third
> Affirmative Defense and counterclaims set forth in their Amended
> Answer, Affirmative Defenses, Jury Demand and Counterclaim,
> and denies Defendants' Cross-Motion for Summary Judgment.

ME1 23035178v.1

## ARGUMENT

### I.    THERE IS NO PROPERTY TO RECOVER AND THEREFORE THE ORDER SHOULD BE REVERSED.

By virtue of the prepetition Settlement Agreement the Upper Crust released any right to the property allegedly fraudulent transferred to Tobins.  Without a right to the property fraudulent conveyed, neither an unsecured creditor nor the Trustee asserting the unsecured creditor's claim derivatively, has a right to recover the property.  A fundamental requirement for avoiding transfers under either 11 U.S.C. §§ 544 or 548 is that the debtor have an interest in the property transferred.  11 U.S.C. §§ 544, 548 (transfer was a "transfer of an interest of the debtor in property."); see also M.G.L. c. 109A, §§ 2 and 7 (an "asset" is defined as "property of the debtor;" "transfer is made" when an "asset" is transferred to a "creditor").  Although not defined, courts interpret the phrase "interest of the debtor in property" to refer to property that, but for the transfer, would have been property of the estate within the meaning of 11 U.S.C. § 541 and would have been available for the benefit of the debtor's creditors.  In re Ogden, 314 F.3d 1190 (10th Cir. 2002) ("[p]roperty of the debtor subject to [Sections 544, 547 and 548] is best understood as that property that would have been part of the estate had it not been transferred before the commencement of [the case].");  see also Matter of Besing, 981 F.2d 1488 (5th Cir. 1993) ("For 548 purposes, interest of debtor in property refers to property which would have been preserved for the benefit of the estate absent the transfer").  If the debtor had legal rights to the property, the debtor has an interest in the property within the meaning of this section and any transfer of an interest can be avoided.  See In re Whitley, 463 B.R. 775 (Bank. M.D. N.C. 2012) (funds transferred by debtor were interest of the debtor in property even though debtor operated Ponzi scheme and funds were initially fraudulently procured by investors);  In re Ryan, 472 B.R. 714 (Bankr. E.D. 2012) (debtor had right stop funds under power of attorney although not full

ownership interest and thus transfer of funds was a transfer of interest of the debtor in property);

see M.G.L.c. 109A, § 8  (limits right to recovery to only the amount of the property transferred).

By its Order the Court failed to recognize the impact of the Settlement Agreement on the

Trustee's assertion of an unsecured creditors claim.  While the Order acknowledged that the

Trustee is not bound by the release (which for the purposes of this Motion, the Tobins do not

dispute) it fails to consider and glosses-over the release of the Upper Crust's right to prosecute

the fraudulent conveyance claims.  By releasing its claims, neither the Upper Crust nor the estate

has any right to return of the property allegedly fraudulent transferred.  Without such a right to

the property allegedly fraudulently transferred neither the Trustee nor any unsecured creditor has

the right to pursue a claim for fraudulent conveyance.

## II.    THROUGH THE SETTLEMENT AGREEMENT ANY FRAUDULENTLY CONVEYED PROPERTY WAS RETURNED TO THE ESTATE.

By signing the prepetition Settlement Agreement and paying $250,000, any alleged

property fraudulently transferred was returned to the estate, and the Trustee's claims either as an

unsecured creditor or representative of the estate have been satisfied.  The purpose of 11 U.S.C.

§§ 544, 548 in conjunction with § 550 is to return the estate to the position it would have been in

if a fraudulent transfer had not occurred.  See SIPC v. Stratton Oakmont, Inc., 234 B.R. 293, 311

(Bankr. S.D.N.Y. 1999) (the principal purpose of section 544(b) "is to undo pre-petition transfers

of property that remove or withhold that property from the estate to the prejudice of creditors.").

By statute, the Trustee's authority is limited and he may not recover "from a transferee that has

already returned to the estate that which was taken in violation of the Code." Dobin v.

Presidential Fin. Corp. of Delaware Valley, 312 B.R. 262, 271 (D.N.J. 2004); See generally

Feltman v. Warmus, 229 B.R. 496, 530-31 (Bankr.S.D. Fla. 1999) (the purpose of 550 is to

"restore the estate to the financial condition it would have enjoyed if the transfer had not

occurred."); In re Sybridge Corp., 312 B.R. 262, 271 (Bankr. D. N.J. 2004) ("We hold therefore

that Section 550(d) of the Code empowers courts to prohibit from recovering under Section

550(a) from a transferee that has already returned to the estate that which was taken in violation

of the Code."). see also In re. Kingsley, Adversary No. 06-2109-BCK, 2007 WL 149118 *4

(Bankr.W.D. Mich.  May 17, 2007) (Hyman, J.) ("to the extent a fraudulent transfer is repaid

prepetition, the claim is satisfied."); see Northborough v. Risley, 384 Mass. 348 (1981) (the

repayment of a fraudulent transfer to the transferor is sufficient to absolve the transferee of

liability under the Uniform Fraudulent Transfer Act); See In re Polichuk, 506 B.R. 405 (Bank.

E.D. Pa. 2014) ( no right to recover property under the Pennsylvania uniform fraudulent transfer

act if the transferee returns to property to the transferor).

   In re Kingsley, Adversary No. 06-2109-BCK, 2007 WL 149118 *4 (Bankr.W.D. Mich.

May 17, 2007) (Hyman, J.), the Chapter 7 Debtor intentionally transferred funds to avoid a

creditor's claims, but before filing for bankruptcy the funds were returned to the Debtor.  Upon

filing for bankruptcy, the Trustee filed an adversary proceeding challenging the pre-petition

transfer as fraudulent.  The Court concluded that both under the Bankruptcy Code and the

Uniform Fraudulent Transfer Act, the

> Trustee may not recover sums that were repaid to the Debtors or to
> the creditors on the Debtors' behalf prepetition.  Under these facts,
> avoidance and recovery would result in a windfall to the estate not
> contemplated by the Code or UFTA.

   In this case, like Kingsley, the prepetition Settlement Agreement, repaid (in full) the

amounts allegedly fraudulently conveyed.  Allowing the Trustee to avoid the payments (after the

Upper Crust accepted the Settlement Agreement including the $250,000) would result in a

"windfall to the estate."  As a result, the Trustee's claims have been fully satisfied.

### III.  THE BANKRUPTCY COURT LACKS JURISDICTION TO ENTER FINAL JUDGMENT ON THE COUNTERCLAIMS AND THIRD AFFIRMATIVE DEFENSE

By its plain language 28 U.S.C. §157 expressly limits the Bankruptcy Court's jurisdiction over non-core claims and precludes a Bankruptcy Court from entering judgment.  In particular, 28 U.S.C. §157  provides in relevant part that

> A bankruptcy judge may hear a proceeding that is non-core but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of facts and conclusions of law to the district court and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

By Rule,

> the district judge may accept, reject or modify the proposed findings of fact or conclusions of law, receive further evidence or recommit the matter to the bankruptcy judge with instructions.

See Fed R. Bank.P. 9033(d).

Here, the Adversary Complaint contains non-core fraudulent conveyance claims and therefore the Court lacks jurisdiction to issue a final decision on the affirmative defense asserted by Tobins.  See e.g. Executive Benefits Ins. Agency v. Arkinson, 134 S.Ct. 2165, 2172 (2014) (adopting the Ninth Circuit's conclusion that "fraudulent conveyance claims although defined under section 157(b) as core may not as a constitutional matter be adjudicated as such (at least in absence of consent.").  Likewise, the Counterclaim asserts common law claims related to the breach of the Settlement Agreement which do not arise under or in the bankruptcy.  Rather the causes of action are common law based upon a prepetition Settlement Agreement.   Thus, the Court lacks jurisdiction to enter a final order.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Court should grant the Tobins Motion

for Reconsideration or in the alternative refer this matter to the District Court.


JORDAN AND STEFANY TOBINS,
By their attorneys,

*/s/ Richard Briansky*_____
Richard E. Briansky (BBO# 632709)
rbriansky@mccarter.com
McCarter English LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6568

Dated: August 1, 2016


## CERTIFICATE OF SERVICE

I, Richard E. Briansky, hereby certify that this document was filed through the Court's

ECF System and will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF).

*/s/ Richard Briansky*_____
Richard E. Briansky

ME1 23035178v.1

10

ME1 23035178v.1